[S. F. No. 7104. In Bank.—August 3, 1915.]

## B. M. AIKINS, Respondent, v. W. S. KINGSBURY, as Register of the State Land Office, Appellant.

SCHOOL LANDS—PURCHASE UNDER ACT OF 1868—DEFAULT IN PURCHASE —STATUTORY PROCEDURE FOR FORFEITURE NOT EXCLUSIVE.—The method of judicial procedure provided by the act of 1868 (Stats. 1867–68, secs. 65, 66), for terminating the right of a defaulting purchaser of school lands purchased under that act was not exclusive, and he may not complain of a different method of procedure subsequently established by the state for accomplishing that end which did not impose upon him more onerous conditions than the former.

ID.—ACT OF 1889—TERMINATION OF RIGHTS OF DEFAULTING PURCHASER. The procedure established by the act of 1889 (Stats. 1889, p. 429) for terminating the rights of such defaulting purchaser did not impose upon him more onerous conditions than those imposed by the act of 1868.

ID.—NATURE OF PURCHASER'S INTEREST IN LAND PURCHASED—PAYMENT OF INTEREST—RESCISSION OF CONTRACT BY STATE.—A person who entered into an agreement with the state for the purchase of school land, under the act of 1868, obtained nothing but the right to acquire a title by compliance with the terms of his agreement. One of the requisites was the payment of interest *in advance,* and when he violated that stipulation in the contract he was in default and the state had the same right that an individual would have possessed to rescind the agreement. The right to rescind and a method of asserting the right were both preserved by the act of

1868, but the method was not exclusive nor was it the sole measure of the power.

ID.—CONSTITUTIONALITY OF ACT OF 1889—IMPAIRING OBLIGATION OF CONTRACT—DUE PROCESS OF LAW.—The act of 1889, providing that whenever an applicant to purchase school lands shall have failed for five years to pay to the state the arrears of principal *or of interest* due for said land and the state shall have issued a certificate to another purchaser prior to the passage of said act, unless the holder of the prior certificate shall pay the entire residue of the interest remaining unpaid for such purchase within six months from and after the passage of the act, said holder shall be deemed to have lost all title to the land described in said certificate and to have surrendered all right to complete the purchase of said land, and all moneys paid by said holder shall be deemed and taken as forfeited to the state, is not unconstitutional as impairing the obligation of the contract between the state and a defaulting purchaser of such land under the statute of 1868, nor does it take the property of such purchaser without due process of law in providing for a rescision of the contract without a restoration of the money previously paid, either as the purchase price or as interest.

ID.—UNIFORMITY OF OPERATION—PROPER CLASSIFICATION.—Such act of 1889 is not unconstitutional for want of uniformity of operation, by reason of the fact that it operates alone upon those purchasers in default whose lands, or the lands claimed by them, had been subsequently sold. Such a classification is just and was within the power of the legislature to adopt.

ID.—STATUTE OF LIMITATIONS—LACHES OF DEFAULTING PURCHASER.—A purchaser of school lands under the act of 1868, who had made default in the payment of interest to the state for thirty-eight consecutive years, during which period the state had sold the land to another person and had attempted foreclosure proceedings under the act of 1868, and in 1889 had constructively notified all persons interested of the intention to disregard any asserted rights to the land arising under the prior purchase unless the arrears should be paid, is barred by the statute of limitations and by laches from asserting any claim against the state to the land.

ID.—MANDAMUS TO COMPEL ISSUANCE OF PATENT.—Under such circumstances, the defense of the statute of limitations and of laches may be interposed in a proceeding in *mandamus* by the prior purchaser to compel the register of the state land office to issue a patent to the land.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, Malcolm C. Glenn, Deputy Attorney-General, and Robert W. Harrison, Deputy Attorney-General, for Appellant.

Jesse Olney, *Amicus Curiae,* for Appellant.

B. M. Aikins, *in pro. per.,* R. P. Henshall, and Luther Elkins, for Respondent.

MELVIN, J.—Petitioner successfully sought a writ of mandate to compel the register of the land office of the state of California to issue a patent to certain school land in Kern County. The judgment was affirmed by the district court of appeal of the first appellate district, but on petition was transferred to this court. There is an appeal also from the order denying the motion for a new trial.

The essential facts are as follows: On June 3, 1869, there was issued to Charles A. B. Brackett a certificate of purchase of the tract of land here in litigation upon the payment of a part of the purchase money,—namely, twenty per cent. This was in accordance with the provisions of the law (Stats. 1867–68, p. 521, sec. 51) that twenty per cent should be payable within fifty days from the date of the certificate of location issued to the purchaser by the surveyor general. The statute also provided that "the balance, bearing interest at the rate of ten per cent per annum *in advance,*" should be "due and payable within one year after the passage of any act of the legislature requiring such payment, or before, if desired by the purchaser." This statute further provided (Stats. 1867–68, p. 526, sec. 65) that upon receipt of the list required to be sent to him by the register of the land office, showing the purchasers who had not made the payments due and the amount of their delinquencies, the district attorney of the county in which the land was situated should commence a suit to foreclose the interest of such delinquent purchasers. The statute further provided that: "If the name of the holder of the certificate be not known, he may be sued under a fictitious name, and service of the summons may be had by publication in some newspaper published in the county for four weeks; or if no newspaper be published in the county, then by posting one copy of the summons for four weeks at the courthouse door of the county, and two copies in public

places in the township where the land is situated.'' Brackett made payment of interest due up to January 1, 1873, but no further payments were tendered for more than thirty-seven years. In August, 1874, the district attorney of Kern County commenced an action to annul the certificate which had been issued to Brackett, naming as defendants "A. B. Brackett and John Doe." The summons was published and a default judgment was entered foreclosing all interest of the defendants in the land.

In December, 1886, the register received the first payment on the purchase price of this same land from one Phillips and issued to him a certificate of purchase in due form. In 1911 the full amount due upon the said land as shown by said certificate was paid to the state.

By an act passed in 1889 (Stats. 1889, p. 428) it was provided that whenever an applicant to purchase school lands shall have failed for five years to pay to the state the arrears of principal *or of interest* due for said land, and the state shall have issued a certificate to another purchaser prior to the passage of the said act of 1889, unless the holder of the prior certificate shall pay the entire residue of the interest remaining unpaid for such purchase within six months from and after the passage of the act, said holder shall be deemed to have lost all title to the land described in said certificate and to have surrendered all right to complete the purchase of said land and all moneys paid by such holder shall be deemed and taken as forfeited to the state.

In October, 1911, the petitioner Aikins became the assignee of all rights of Charles A. B. Brackett under his certificate of purchase, and he tendered payment in full of principal and interest and incidental fees, and demanded that a patent be issued to him. This demand was refused, whereupon he proceeded by petition for *mandamus* as set forth above.

Appellant contends: 1. That the foreclosure proceeding against "A. B. Brackett and John Doe" was efficient and sufficient to oust Charles A. B. Brackett from all interest in the land; 2. That the act of 1889 did not operate as an impairment of the contract between Brackett and the state and that, therefore, under the provisions of said act Brackett's interest in the land was terminated; 3. That petitioner's rights are barred by laches and by the statute of limitations; and, 4. That mandate will not lie to determine the con-

flicting claims of petitioner and Michael Phillips, but that such conflict must be settled under an order of reference by the register under sections 3414 and 3415 of the Political Code. At the oral argument, however, we instructed counsel to confine the discussion to two matters: the question of the constitutionality of the act of 1889 and the alleged laches of the petitioner. The conclusion which we have reached makes it unnecessary to consider the other points.

Petitioner's position is that the act of 1889 impairs the obligation of his contract, because, as he asserts, the statutory provision for foreclosure and redemption existing at the time of Brackett's purchase formed a part of the agreement. Assuming, without deciding, that the attempted foreclosure by the action of the state against "A. B. Brackett and John Doe" was void, let us determine whether or not the petitioner was entitled under his contract to the sort of procedure pro-vided in the then existing act, and *no other*, in any effort on the part of the state to deprive him of his interest in the lands. It is to be noted that the procedure outlined in sections 65 and 66 of the act of 1868 was not expressly made a part of the contract. We have set out the former section in substance above. The latter gave the holder of a certificate of purchase twenty days after a decree of forfeiture and before copies of such decree had been filed with the register of the land office and the recorder of the county, during which time he might redeem by paying to the sheriff of the county in which the property was situated the amount due to the state. But we do not think the method of terminating the rights of a defaulting purchaser under the act of 1868 was exclusive. It was merely a method of declaring a forfeiture. If the petitioner was in default, he may not complain because the state has established a method of declaring a forfeiture different from the judicial procedure authorized by the statute at the time of his purchase. At the most he may only complain if the later procedure imposes upon him more onerous conditions than the former. It is sometimes difficult to draw the line between legitimate alterations of a remedy and provisions which impair a right (*McCauley* v. *Brooks*, 16 Cal. 31), but we find no such difficulty here. The provisions of section 66 of the law of 1868 with respect to the entry of judgment and the filing of certified copies thereof and the period of redemption are all but matters of procedure which

a purchaser is not entitled to enjoy without change, provided the substituted procedure was not more onerous than that of the earlier statute. No actual notice of the entry of judgment or the filing of copies was required under the act of 1868. The notice was not necessarily personal and the purchaser was charged with the same degree of constructive notice by the act of 1889. The act of 1889, instead of giving to the holder of a certificate of purchase only twenty days after a declaration of forfeiture in which to redeem by paying up the arrears, gave him six months for the accomplishment of that result. The later was therefore more liberal to the holder of a certificate of purchase than was the earlier act. A judgment procured under the procedure provided by the act of 1868 amounted to a declaration of forfeiture or rescission which would become final unless within twenty days the arrears should be paid, and the same is true of the conditional forfeiture declared by the act of 1889 except that the period of redemption was very much longer and therefore very much more favorable to the delinquent purchaser. The passage of an act providing a new remedy for the state as a contracting party does not necessarily deprive the other party to the contract of his rights. When Brackett entered into the agreement for the purchase of the school land he obtained nothing but the right to acquire a title by compliance with the terms of his agreement. One of the requisites was the payment of interest *in advance* and when he violated that stipulation in the contract he was in default, and the state had the same right that an individual would have possessed to rescind the agreement. The right to rescind and a method of asserting that right were both preserved by the act of 1868, but the method was not exclusive nor was it the sole measure of the power. A remedy may be given where none existed before and it follows that a new and more liberal remedy may be substituted for one which was in effect at the time the contract of sale was made. (*Fristoe* v. *Blum,* 92 Tex. 84, [45 S. W. 998].) In the later case of *Standifer* v. *Wilson,* 93 Tex. 232, [54 S. W. 898], *Fristoe* v. *Blum* was approved and the whole subject received careful attention. The facts in the later Texas case were practically identical with those before us here, involving, in exactly the same way, the state's right to provide a new procedure for declaring a contract at an end on failure of the vendee to pay to the state arrears

of interest. That case went to the supreme court of the United States and the judgment was affirmed. (*Wilson* v. *Standefer,* 184 U. S. 399, [46 L. Ed. 612, 22 Sup. Ct. Rep. 384], in which, by the way, the spelling of the name of the defendant in error differs from that used in the Texas report.) Mr. Justice Shiras, in preparing the opinion of the supreme court of the United States, adopted a portion of the opinion of the supreme court of Texas and that language is so thoroughly applicable to the problem before us that we in turn quote a part of it as follows: "The statute of 1879 does not give authority to any officer to rescind without judicial action; but the right of rescission existed in the state, and its exercise might be subsequently authorized through the lawmaking power, and an exercise of it, based upon the default of the other party, would not be a denial of any right of his. It could only be held that the right of rescission for default of the purchaser did not exist by holding that the contract provided that it should not exist, or that it should be exercised in a particular manner; but the contract embraces no such provision. There is no undertaking on the part of the state with the purchaser that the remedy·prescribed in this statute, and no other, shall be pursued, unless it is to be implied from the mere presence of the provision in the statute, and we think it is well settled that no such implication arises. In the ·proposition often stated in the decisions that parties contract with reference to existing laws, and that such laws become a part of the contract, the reference is to those laws which determine and fix the obligation of the contract, the correlative rights and duties springing from it and not to laws of mere procedure prescribing remedies. With reference to these, there is ordinarily no obligation arising, but the contract is made in contemplation of the power of the legislature to change them. Of course, all remedy cannot be taken away, nor can the existing remedy be so altered as to take away or impair any of the rights given by the contract as interpreted by existing law." . . . "The act of 1897 simply enforces a right which existed in the state from the formation of the contract. It takes away no right of the purchaser, unless it can be said that he had the right to demand that the particular remedy provided by the act of 1879 should be followed. This could only be true if the contract made that remedy exclusively applicable, which was not the case." In the course

of the opinion of the supreme court of the United States the learned justice said:

"It is apparent that the purchaser was not deprived by the act of 1897 of the right to be heard in a court of justice as to the fact of payment. His position under that act was quite as favorable as under the prior act of 1879. It is scarcely necessary to say that this court, when asked to revise proceedings in state courts, have always held that due process of law is afforded litigants if they have an opportunity to be heard at any time before final judgment is entered." He also quoted the language of Mr. Chief Justice Marshall in *Sturges* v. *Crowninshield,* 4 Wheat. 122, [4 L. Ed. 529]. "The distinction between the obligation of a contract and a remedy given by the legislature to enforce that obligation exists in the nature of things, and without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation may direct."

In *Waggoner* v. *Flack,* 188 U. S. 595, [47 L. Ed. 609, 23 Sup. Ct. Rep. 345], it was held that where the act under which a purchase of land was sought to be made and under which the vendee had made his initial payment, contained no provision for rescission for failure to make future payments, the obligation of the contract was not violated by a subsequent act granting a remedy to the state but providing a reasonable period of redemption.

Applying the reasoning of these cases to the one at bar we are convinced that the act of 1889 is not unconstitutional as impairing the obligation of a contract.

It is argued that the act of 1889 sought to take from the holder of a certificate his property, without due process of law. It is true that when the state enters into a contract as a vendor of land it is subject to the same rules that govern private parties to such agreements and the argument is made that the state is not in a position to rescind without restoring the money paid by Brackett during the early years of the existence of the certificate. There are two answers to this. The first is that the act of 1868 gave the state the power to cause the annulment of the contract as against one in default without the restoration of the part payment. The second answer is that the forfeiture, or, more properly speaking, the rescission, is based upon undoubted arrears of interest payment of which was of the essence of the contract of purchase.

The state, the vendor, had a right under the act of 1868 to rescind because of failure to pay interest, although no act had been passed prescribing the time when final payment of the principal should be due, and the procedure outlined in that statute did not make a return of money previously paid, either as the purchase price or as interest, a condition precedent to the successful maintenance of an action of foreclosure against one delinquent in the payment of interest. The act of 1889, therefore, deprived the holder of the certificate of no right, possessed by virtue of the earlier statute, to the restitution of moneys previously paid. Our conclusion, therefore, is that the statute of 1889 is not unconstitutional as depriving delinquent purchasers of property without due process of law.

The statute which we have been discussing is also attacked because of alleged want of uniformity of operation. It is said that the law operated alone upon those in default whose lands, or the lands claimed by them, had been subsequently sold. But we fail to see any injustice in the classification. The legislature was held to no uniformity of classification except to treat all of a given class in the same way. The classification adopted is just and was intended to protect persons who had acquired rights in the belief that the earlier certificates had been abandoned. We conclude, therefore, that the act of 1889 was in all respects constitutional.

Appellant contends that the delay on the part of Brackett and his associates, extending over many years, amounted to laches and this, as the learned attorney-general insists, is true whether we consider the foreclosure suit in which judgment was given against "A. B. Brackett and John Doe" in 1874 as being void upon its face or not. Without reference to the validity or infirmity of that judgment these facts are evident: Brackett was in default January 1, 1873. Phillips has possessed since 1886 a certificate which was *prima facie* evidence of title (Pol. Code, sec. 3514). Since 1889 the statute has declared the effect of the later certificate if uncontested, yet not until 1911 did Brackett's successor seek to make payment of any sort to the state. For more than thirty-eight years no attention was paid to the obligation to pay interest in advance each year to the state. Meanwhile the state had at least attempted foreclosure proceedings and in 1889 had constructively notified all persons interested in the matter of the intention to disregard any asserted rights to the land arising

under the Brackett purchase unless the arrears should be paid, yet nothing was done by the holder of the certificate which had been issued to Brackett until after the completion of the sale to Phillips. Under these circumstances the statute of limitations, which was pleaded, clearly applies. (*Barnes* v. *Glide,* 117 Cal. 7, [59 Am. St. Rep. 153, 48 Pac. 804].) While this is in form an action at law to compel the performance by an officer of the state of a duty imposed upon him by statute it is in effect an action to require specific performance on the part of the state and the laches of the petitioner may be shown to defeat his purpose. We are convinced that the petitioner slept upon his rights and should not now be heard after the lapse of many years, to assert his claim. (*Kleinclaus* v. *Dutard,* 147 Cal. 246, [81 Pac. 518]; *Hynes* v. *M. J. & M. M. Consolidated,* 168 Cal. 654, [144 Pac. 144]; *Emerson* v. *Kennedy etc. Co.,* 169 Cal. 718, [147 Pac. 939].)

The judgment and order denying a new trial are reversed and the superior court directed to enter judgment dismissing the petition for a writ.

Henshaw, J., Lorigan, J., Shaw, J., Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.