[Sac. No. 2203.    In Bank.—June 2, 1916.]

# HENRY A. BASSFORD, Respondent, v. EDWIN T. EARL et al., Appellants.

NEW TRIAL—LOSS OF BILLS OF EXCEPTION AND STATEMENTS BY PUBLIC CALAMITY — DISPOSITION OF PENDING ACTIONS — CONSTRUCTION OF ACT OF MARCH 23, 1907.—The act of March 23, 1907 (Stats. 1907, p. 998), entitled "An act providing for the disposition of actions and proceedings in which bills of exceptions and statements on motion for a new trial have been lost or destroyed by conflagration or other public calamity," was intended to operate retroactively, and is applicable to conditions existing at the time of its passage, and is not limited to those subsequently arising.

ID.—CONDITION WARRANTING STATUTORY RELIEF—PENDING MOTION FOR NEW TRIAL—IMPRACTICABILITY OF RESTORATION OF PROCEEDING.—The condition which must exist, in order to warrant the relief authorized by the statute, is that it must appear that the action was subject to review by motion for new trial pending at the time of the destruction of the bill of exceptions; and the words, "it is by the court . . . deemed *impossible* or *impracticable* to restore such proceedings," have reference *not* to the date of the destruction, but to the date *when the court heard the application* authorized by the act.

ID.—DILIGENCE ESSENTIAL IN MOVING PARTY TO RESTORE RECORD.—The statute contemplates diligence on the part of the moving party in availing himself of such means as existed after the destruction of the record to obtain another transcript of the proceedings upon the trial, and if by his neglect a means of doing so has been lost by death or for other reason when, by due diligence, he might have caused the restoration of the record, he may not be permitted to contend, at the hearing for the new trial provided in proper cases by the statute, that no other record can be obtained.

ID.—DISCRETION OF COURT IN GRANTING MOTION.—Even assuming that the statute contemplates the conditions existing at the time of the destruction of the proposed bill of exceptions and not those in existence at the time of the hearing, it cannot be said, under the circumstances of this case, that the lower court erred in granting the motion for a new trial, because the court is clothed by the statute with power in its discretion to grant such new trial.

ID. — CONSTITUTIONAL LAW — DUPLICITY OF TITLE OF ACT — TITLE NOT MISLEADING.—The act is not in contravention of section 24 of article IV of the constitution, requiring that every act shall embrace but one subject, which shall be expressed in its title. The inclusion in

the title of both bills of exceptions and statements on motion for new trial does not render the act void for duplicity of title, and the title is not misleading because it refers to such documents in general while the body of the act deals with "proposed" bills of exceptions and statements.

ID.—REGULATION OF PRACTICE IN COURTS OF JUSTICE—ACT NOT SPECIAL LEGISLATION.—The fact that the act provides a remedy only for the destruction of *proposed* bills of exceptions and statements, and none for *settled* bill and statements, does not make it special legislation regulating the practice in courts of justice and in contravention of section 25 of article IV of the constitution. There is a rational basis for this distinction, due to the difference in the nature of the two kinds of documents and to the different degree of knowledge of the court respecting the proposed and the settled bill or statement.

ID.—LIMITATION TO DESTRUCTION BY PUBLIC CALAMITY.—The act is not void because it extends aid to the victims of *public* calamity but not to those who have suffered from private accident destroying their papers.

ID.—IMPAIRMENT OF OBLIGATION OF CONTRACT—CHANGE OF REMEDY.— The act does not impair the obligation of a contract. It merely changes a remedy applicable to a pending proceeding. The party in whose favor judgment had been rendered possessed no vested right, but merely held it, pending the motion for a new trial, subject to the power of the legislature to authorize the court to grant a new trial under the peculiar circumstances brought about by public calamity.

ID.—LACHES OF RESPONDENT—DISCRETION OF TRIAL COURT NOT ABUSED. Notwithstanding the respondent's alleged laches, it cannot be held that the lower court, under the circumstances of this case, abused its discretion in considering and granting the motion for new trial herein.

APPEALS from orders of the Superior Court of Solano County granting a new trial, and from orders refusing to dismiss motions for new trial. Henry C. Gesford, and R. H. Latimer, Judges presiding.

The facts are stated in the opinion of the court.

Guy C. Earl, Anderson & Anderson, and W. H. Spaulding, for Appellants.

William M. Cannon, Jabish Clement, and Paul C. Morf, for Respondent.

MELVIN, J.—This was an action brought by Henry A. Bassford for a decree declaring that an instrument in form a deed, executed by plaintiff to Edwin T. Earl, was in fact a mortgage. The action was commenced in the latter part of .1902; was subsequently tried before the late Judge Buckles, who, disregarding the findings of an advisory jury, entered judgment in favor of defendants on June 3, 1904. Plaintiff served notice of intention to move for a new trial, and after service of a proposed bill of exceptions and proposed amendments thereto, an effort was made to settle a bill. On June 17, 1905, by consent of the court and the attorneys, all of the papers, including the transcript of the testimony, were, on June 17, 1905, left with Wm. M. Cannon, Esq., one of plaintiff's attorneys, who took them to his office in San Francisco with the understanding that, at his leisure, he would examine the proposed amendments which the court had not settled, and endeavor to lighten the labors of the court and the opposing counsel by agreeing to as many of said amendments either in their original form or with suggested modifications as he felt that he could accept without prejudice to his client's case. All of the papers were destroyed in the great conflagration of April 18, 1906. On March 23, 1907, a remedial statute, which we shall presently discuss in detail, was approved, and on May 10th of the same year plaintiff served notice of his intention to move for a new trial under said statute. The motion came on for hearing before Judge Harrier, but the hearing was postponed and the matter remained undecided when Judge Harrier left the bench. Subsequently, Judge Buckles, who had served for a time on the bench of the district court of appeal, again became judge of the superior court of Solano County. On October 16, 1909, motions to dismiss both of the pending motions for a new trial were served and filed, and in January, 1910, were granted. Appeals were taken from the orders dismissing plaintiff's two pending motions for new trial, and said orders were by this court reversed on the ground that they were made by a disqualified judge. (*Bassford* v. *Earl,* 162 Cal. 115, [121 Pac. 395].) The motions to dismiss were renewed, and on February 14, 1913, were denied by Judge Gesford. New motions to dismiss were filed, and on May 24, 1913, these motions, as well as the motions of plaintiff for a new trial, came on for hearing be-

fore Judge Latimer, then sitting in Solano County. He subsequently filed a written opinion, and then, on September 16, 1913, made formal orders denying both motions to dismiss and granting the motion for a new trial made under authority of the statute of 1907. The defendants have sought to appeal from all of the orders of Judge Gesford and Judge Latimer, but it is conceded that only the order granting the plaintiff's motion for a new trial is appealable, and to the appeal from said order we will therefore devote our attention.

The authority for the order granting the new trial is the act of 1907, to which reference has been made above. The essential parts of that statute for this discussion (Stats. 1907, p. 998) are as follows:

"When any proposed bill of exceptions . . . on motion for a new trial, . . . is . . . destroyed by reason of conflagration or other public calamity, and no other record of the proceedings upon the trial thereof can be obtained, and such action or proceeding is subject to review by motion for new trial, pending at the time of such loss or destruction, and it is by the court in which such action or proceeding is pending, deemed impossible or impracticable to restore such proceedings . . . so as to enable the court to review the judgment or order therein by motion for new trial, the court may grant a new trial of such action or proceeding if at the time of such loss or destruction a motion for new trial be pending therein. . . . In order to grant such new trial, it shall be unnecessary to have any bill of exceptions or statement of the case settled, but upon the facts above recited being shown to the satisfaction of the court by affidavit or otherwise, the court shall have power in its discretion to grant such new trial."

The title of the act is instructive. It is as folllows: "An act providing for the disposition of actions and proceedings in which bills of exceptions and statements on motion for a new trial have been lost or destroyed by conflagration or other public calamity."

It will be noticed that in the title the past perfect form of the verb is employed and the statute is outlined as referring to cases in which bills of exceptions "have been destroyed." In the body of the act the form of the verb used is the present "is destroyed," but it seems clear that the

expression refers to the *condition* of the record and not to
the act of destruction. This interpretation is strengthened
by the title of the statute; by the historical circumstances
preceding and attending its passage; and by the rule that
remedial statutes are to be liberally construed. Thousands
of documents had been destroyed by the great conflagra-
tions in San Francisco and Santa Rosa, and there can be
no doubt that this statute was passed for the purpose of
relieving one phase of the situation so produced. It would
be most unwarranted, therefore, unless the compulsion of
the language itself were very great, to hold that the act was
intended only for application to conditions arising after its
passage. The legislature was endeavoring to relieve liti-
gants from a situation created by the great fire. *In re Mit-
chell*, 120 Cal. 386, [52 Pac. 799], is authority for the rule
that when a law is fairly susceptible of two constructions, the
one consistent with justice, sound sense, and wise policy
should be adopted. (See, also, *Appeal of Houghton*, 42 Cal.
35.) It is not necessary to cite any more of the numerous au-
thorities sustaining this well-known and unquestioned rule.

We may then thus read the first part of the statute:
"When any bill," etc., "has been destroyed," etc. What
conditions must have existed at the time of the destruction
of the bill of exceptions? Merely it must appear that the
action was subject to review by motion for new trial *pend-
ing at that time*. Of course, the court was not expected
to hear the motion at the moment of the fire, because the
statute itself was not passed until eleven months later.
The court could not "deem" anything with reference to
the record until the matter was presented. Obviously,
therefore, the words, "and it is by the court . . . deemed
*impossible* or *impracticable* to restore such proceedings,"
have reference *not* to the date of the destruction, but to
the date *when the court heard the application* authorized
by this statute. Any other interpretation is not only op-
posed to the language of the statute itself but to the benevo-
lent purpose of it. We think, however, that the statute
did contemplate diligence on the part of the moving party
in availing himself of such means as existed after the
destruction of the record to obtain another transcript of the
proceedings upon the trial, and that if by his neglect a
means of doing so has been lost by death or for other reason

when, by due diligence he might have caused the restorations of the record, he should not be permitted to contend, at the hearing for the new trial provided in proper cases by the statute, that no other record can be obtained. In such a case his inability to obtain a bill of exceptions would be the result of his neglect and not of the conflagration and the destruction of the original. But the burden of the moving party has been met, at least to the extent that we cannot say the court below erred in holding that Mr. Cannon was not lacking in diligence because of his failure to obtain a new transcript after the burning of the original one.

The reporter, who was present at the trial and subsequently prepared a transcript of the proceedings, died about five months after the conflagration of April 18, 1906. It is perfectly clear that when the application under this statute was made it was impossible to get either a carbon copy of the original transcript or a new transcript by the reporter who had been present at the trial. There was some evidence that a certain phonographic reporter would undertake, if given plenty of time and a fee about five times greater than that originally paid for the transcript, to reproduce it from the notes of the deceased reporter; but opposed to this were affidavits of some of the best reporters in California, in which they declared that such a feat was impossible, and there was further testimony that upon at least one occasion, the reporter who said he could transcribe the notes had failed in an effort to read them in court. We cannot say, therefore, that Judge Latimer, in granting the motion for a new trial, abused the discretion with which he was expressly and unqualifiedly clothed by the language of the statute.

But even assuming for the purposes of argument that the statute contemplated the conditions existing at the time of the destruction of the proposed bill of exceptions and not those in existence at the time of the hearing, we cannot say that the lower court erred in granting the motion for a new trial, because the court is clothed by the statute with "power in its discretion to grant such new trial." It is a matter of history and of common knowledge that the practice of the law in San Francisco was thrown into a very disorganized condition by the great conflagration of April 18, 1906. For weeks and months lawyers were deprived of the conveniences to which they had been accustomed, and as soon as an at-

torney achieved some semblance of organization of his office force, he was kept busy by his clients, who were anxious to collect the money due them from the insurance companies. It would therefore be no abuse of discretion for a court to hold that it was "impracticable" for Mr. Cannon to obtain a new transcript within the five months following the fire. In an elaborate affidavit Mr. Cannon described his engagements prior to April 18, 1906, and deposed that had not the conflagration of that date destroyed the proposed bill of exceptions and the other papers, he would have been very shortly thereafter in a position to report finally on the bill of exceptions. He described the chaos resulting from the destruction of his office and his home; the impossibility of transacting any law business in San Francisco for a long time after the fire; the realization on his part that the case must receive early attention, and the making of a memorandum with reference to it; but, as in his affidavit it is set forth, he was "not able to take up the matter until after the death of said shorthand reporter Hyatt." We think the showing of due diligence was sufficient to prevent us from overthrowing the action of Judge Latimer on the ground of abuse of discretion on his part.

The constitutionality of the act of 1907 is attacked upon the ground that the subject is not expressed in the title as required by section 24 of article IV of the constitution, and that more than one subject is embraced within the title in contravention of the same section of the constitution. There is no merit in appellant's contentions upon this subject. Bills of exceptions and statements do not differ in essence. Each preserves a record of the proceedings in the lower court for the use of the appellate tribunal. The expressions are frequently considered synonymous. (*Dennis* v. *Gordon,* 163 Cal. 427, 430, [125 Pac. 1063].) Therefore, an act which in its title purports to deal with bills of exceptions and statements is not void for duplicity of title, and the objection that the title refers to "bills of exceptions" and "statements" while the text deals with "proposed" bills and statements is equally without merit. The title is not misleading merely because it refers to bills of exception in general and not to inchoate bills, called "proposed bills of exception." It has been held that where the title embraces a general class while only a special division of that class is contemplated,

the constitutional requirement is not disobeyed, as where the title by its terms includes ''general'' vaccination while. the body of the statute deals with vaccination of children in the public schools. (*Abeel* v. *Clark,* 84 Cal. 226, [24 Pac. 383]; *French* v. *Davidson,* 143 Cal. 658, [77 Pac. 663].) It is well settled that the constitutional provision invoked by appellants must be liberally construed. (*Estate of Elliott,* 165 Cal. 339, 344, [132 Pac. 439].)

Nor is the act an example of special legislation regulating the practice in courts of justice and in contravention of section 25 of article IV of the constitution. True, it provides a remedy only for the destruction of *proposed* statements and bills of exception and none for *settled* bills and statements. There is a rational basis for this distinction, however, due to the difference in the nature of the two kinds of documents and to the different degree of knowledge of the court respecting the proposed and the settled bill or statement. A settled bill of exceptions is a court record in the full sense of the term. In case of its destruction its restoration is provided for by the remedial legislation of 1906, [Stats. 1906, (Ex. Sess), p. 73], and the person seeking to have such a destroyed record restored is required to reproduce only its substance. Such ''substance'' generally is known to the court and to counsel for both litigants. But a *proposed* bill of exceptions is inchoate. The court has not yet passed upon it, and in the nature of things its contents are not so well known to counsel for both sides of the case as the matters set forth in a settled bill of exceptions after discussion before the judge and his decision upon disputed questions. It would have been unfair to respondents if the legislature had permitted appellants to restore, from memory, the alleged substance of proposed bills of exceptions with which, in their original form, neither opposing counsel nor the judges could have become familiar. It would have been unfair to appellants with pending proposed bills of exceptions to have left them remediless. Therefore, the legislature made a class of those litigants whose proposed bills of exceptions had been destroyed by great public calamity, and empowered courts to administer the remedy least productive of harm to the contending parties, namely, a new trial. There was justification for the classification, and the remedy was applicable to all of the class. The act is attacked because it makes no provi-

sion for those cases in which a motion for a new trial has been noticed but no bill of exceptions has been proposed. This failure does not vitiate the statute. An unproposed bill of exceptions, whether prepared, partially prepared, or not created at all, is to all intents and purposes in the breast of the appellant. The statute was dealing with the destruction of something which had been legally brought to the court's attentions, *not* to something which might never have a physical existence and might never be destroyed by fire. A law is not special merely because it does not include within its scope all classes which might be benefited by such legislation. Many classes of people suffered from the results of the great fire of 1906. It was for the legislature to determine which classes required relief, and it is sufficient if the subjects of the legislative solicitude possess such intrinsic peculiarities as to justify the conclusion that special enactment in their behalf is desirable. (*In re Martin,* 157 Cal. 57, [26 L. R. A. (N. S.) 242, 106 Pac. 235].) The distinction between proposed bills of exception and those not yet prepared is, we think, sufficient to justify the exclusion of the one class and the inclusion of the other in the provisions of the remedial statute. This argument applies also to the contention that the act is void because it extends aid to the victims of *public* calamity but not to those who have suffered from private accident destroying their papers.

The act of 1907 does not impair the obligation of a contract. It merely changes a remedy applicable to a pending proceeding. The judgment in favor of appellants was subject to the court's power to grant a new trial. They possessed no vested right, but they held their judgment, pending the motion for a new trial, subject to the power of the legislature to authorize the court to grant a new trial under the peculiar circumstances brought about by public calamity. (*Title etc. Restoration Co.* v. *Kerrigan,* 150 Cal. 289, 313, [119 Am. St. Rep. 199, 8 L. R. A. (N. S.) 682, 88 Pac. 356].) It has been held that an interest acquired under a statute may be lost by reason of the provisions of a later statute, and that the possessor of that interest has no contractual right to have applied the one method of forfeiture existing at the time his interest came into being. (*Aikins* v. *Kingsbury,* 170 Cal. 674, 678, [151 Pac. 145].) The same principle is ap-

plicable to a litigant's rights under a judgment which has not become final.

There is nothing in the case of *Johnson* v. *Gebhauer,* 159 Ind. 271, [64 N. E. 855], in conflict with these views. In that case the court was considering an attempt on the part of the legislature to extend the time for filing bills of exceptions in cases in which all the proceedings in the trial court had been already *finally disposed of.* In other words, the legislature was seeking to confer upon courts power to act in cases in which said courts had lost jurisdiction.

The statute does apply to the case at bar. It is argued that the law is not retroactive because of the use of the verb "is destroyed." We have previously herein considered the meaning of those words and the general language of the act and its title. Without repetition of that discussion we may say that the purpose of the legislature to apply it to conditions created before its enactment is very clear, and that purpose is sufficiently expressed in the statute itself. In the second section it is provided that "In any case *now pending* such motion may be made at any time within sixty days *after the passage of this act."* (Stats. 1907, p. 998.) It is impossible to read the statute without coming to the conclusion that it was intended to operate retroactively.

It is argued that this court should pass upon the subject of respondent's laches, because the judge of the superior court failed to exercise the discretion vested in him. It is true that Judge Latimer in his written opinion indicated that he felt himself bound in some measure by the rulings of Judge Gesford in refusing to grant defendants' motions to dismiss the motion for new trial. But the fact remains that he was clothed with a wide discretion, and that he must be presumed to have exercised it. Appellants agree with respondent that the only appealable order herein is that by which Judge Latimer granted the new trial, but maintain that upon this appeal this court may review the other four orders denying motions to dismiss motions for new trial. Respondent insists that the orders of Judges Gesford and Latimer denying the motions to dismiss the motions for new trial may not be reviewed on appeal and particularly because they were not made the subject of exceptions; but assuming that the view of appellants is the correct one, we cannot say that they established laches on the part of respondent. The

whole record was before Judge Latimer, and it included all of the affidavits with reference to delays. We cannot say that he erred in holding, under all of the circumstances revealed, that he might exercise his discretion in favor of considering and granting plaintiff's motion for a new trial. Similarly, we cannot say that a review of Judge Gesford's rulings would compel a different conclusion from the one which was reached.

The order granting plaintiff's two motions for a new trial is affirmed. The remaining appeals are dismissed.

Shaw, J., Henshaw, J., and Lorigan, J., concurred.

Rehearing denied.