[L. A. No. 13918. In Bank.—March 31, 1933.]

COUNTY OF SAN BERNARDINO (a Body Corporate and Politic of the State of California), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and SARAH D. ALLEN, Respondents.

Stanley Mussell, District Attorney, and James L. King, Chief Deputy District Attorney, for Petitioner.

A. I. Townsend and Robert M. Bradley, Jr., for Respondents.

Redman, Alexander & Bacon, R. P. Wisecarver, Daniel W. Burbank and C. F. Laumeister, as *Amici Curiae*.

THE COURT.—This is a petition to review an award of the Industrial Accident Commission. The cause was before the District Court of Appeal, Fourth Appellate District, and an opinion was rendered therein by Mr. Justice *pro tem.* Harden, which we incorporate in part as a correct presentation of the facts and a proper determination of certain issues. The portions of said opinion which we incorporate are as follows:

"Some time prior to January 24, 1928, Mrs. Sarah D. Allen was appointed by the County of San Bernardino as deputy registrar of voters of said county. She was of the age of about seventy-five years at that time. Joseph C. P. Hook, deputy city clerk of Redlands in said county, administered the oath of office. No particular term of employment was fixed in her appointment, but it was contemplated that she would act until thirty days prior to the presidential primary election on May 1, 1928. It was stipulated by the parties hereto that the relation existing between Mrs. Allen and the county could have been terminated at any time without liability to either party. While she had the legal right to register any qualified elector in the county, she was assigned by said deputy city clerk to a certain district in the city of

Redlands, definitely marked by reference to designated streets, for the purpose of securing registrations. Other persons were engaged by the county to perform similar services in districts assigned to them. Mrs. Allen was not required to work any particular number of hours, nor on any particular days. Aside from the assignment to the particular district, the only instructions given her were printed on a pad of registration blanks and covered the law upon the subject of the registration of electors. She had had previous experience in the same work. In securing registrations she followed her own methods and furnished her own transportation. Payment for services rendered was at the rate of eight cents per capita for registrations secured; and up to the time of the accident involved herein she had earned an average of about $1.50 per day for the time devoted to the work, amounting in all to $28. On January 24, 1928, while engaged in securing registrations within her district, a question arose as to whether she should register certain school teachers who resided within the district but were employed at the time at a point beyond the boundaries thereof. Being uncertain as to her rights and duties under the circumstances, Mrs. Allen proceeded toward the office of said deputy city clerk to secure advice and directions from him upon the subject. While walking upon the sidewalk within the boundaries of the district assigned en route to consult said deputy city clerk for said purpose, she was struck by colliding automobiles, with the result that she sustained serious injuries. The county had no connection with either automobile involved in the collision. No action was filed to recover damages for the injuries sustained. On July 20, 1928, Mrs. Allen effected a settlement and was paid $3,500 by an insurance company in behalf of one of the parties involved in the collision, in consideration of which payment she signed a full release of said party from all claims and causes of action on account of injuries sustained by her and damage to her property. The settlement was made without the knowledge or consent of the county; neither did the Industrial Accident Commission nor any court consent thereto.

"Pursuant to proceedings instituted by Mrs. Allen before the Industrial Accident Commission on January 10, 1929, for compensation for said injuries, a final decision was ren-

dered by the Commission in favor of the petitioner therein on March 7, 1932. It was found by the Commission that at the time of the injury Mrs. Allen was employed as a deputy registrar of voters by the County of San Bernardino; that the injuries sustained arose out of and in the course of her employment; that the employer was uninsured and that both employer and employee were subject to the provisions of the Workmen's Compensation Insurance and Safety Act; that Mrs. Allen was entitled under the provisions of said act to $675.54 for permanent disability and to $2,225.70 for her reasonable medical expenses, making a total of $2,901.24; and an award was made against the County of San Bernardino for that amount, less $75 payable to her attorney. The decision further recites: 'The said applicant received the sum of $3,500.00 under a settlement with the third party causing the injury, no part of which sum has been received by the defendant herein (the County of San Bernardino). Testimony was duly presented to this Commission tending to establish that of the said amount of $3,500.00 the sum of $1,000.00 represented, under agreement of the parties to said settlement, the element of pain and suffering caused by said injury as distinguished from compensable disability and expenses.' The Commission held, however, that it had no jurisdiction to make a judgment segregating any portion of the amount received in the settlement, nor to grant any credit to the county upon its liability. The county has not paid Mrs. Allen anything as compensation under said act.

"The first point raised in this proceeding is that at the time of the injury Mrs. Allen was not an employee within the meaning of that term as defined by the Compensation Act; that, on the contrary, she was an independent contractor. By the terms of section 8 (a) of said act the term 'employee' is defined to mean: ' . . . all elected and appointed paid public officers, . . . but excluding any person whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer.' An 'independent contractor' within the meaning of said act is held in *Fidelity & Casualty Co.* v. *Industrial Acc. Com.*, 191 Cal. 404, 407 [216 Pac. 578, 579, 43 A. L. R. 1304] to be: 'One who renders service for a specified recompense for a specified result, under the control of his prin-

cipal as to the result of his work only, and not as to the means by which such result is accomplished.' There is no claim that Mrs. Allen's employment was casual. We think the language of the statute is a complete answer to the contention that she was not an employee. At that time a deputy registrar of voters of said county was a deputy county clerk and was an appointed, paid public officer. (Sec. 4237, Pol. Code; 1927 Stats. 1075.) If more need be said upon this phase of the case, we think that, aside from the fact that an appointed paid public officer is declared to be an employee, the nature of the relationship existing between Mrs. Allen and the county would prevent a holding that she was an independent contractor. ■ Ordinarily, unless but one inference can reasonably be drawn from the facts, the question whether a workman is an employee within the meaning of the act is one of fact for the Commission, upon which its finding is conclusive. (*Roman Catholic Archbishop* v. *Industrial Acc. Com.*, 194 Cal. 660 [230 Pac. 1].) Stress is laid upon the mode of payment adopted as indicating that Mrs. Allen was not an employee. ■ 'A workman who is paid wages by the piece or quantity comes within the provisions of the Workmen's Compensation Act the same as one who is paid by the day. Wages may be measured by time, by the piece, or by any other standard . . . One of the best tests to determine whether the relation is that of an independent contractor or that of employer and employee is the right of control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent. . . . Coincident with the right of control is the right of either the employer or the employee to terminate the relation without liability. This is but another way of stating the rule, for the right to immediately discharge involves the right of control.' (*Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577, 581.) The mode of payment did not make Mrs. Allen an independent contractor, and the fact that the county retained the right to discharge her at any time was inconsistent with the creation of that relation. The Commission has found that she was an employee and not an independent contractor. The finding is proper.

■ "The second point raised is that Mrs. Allen was not engaged in the course of her employment at the time she was injured. Whether an injury arose in the course of the employment is primarily a question for the Commission to determine, and its findings on such question will not be disturbed when there is substantial evidence to support them. (*Myers* v. *Industrial Acc. Com.*, 191 Cal. 673 [218 Pac. 11]; *Crockett* v. *Industrial Acc. Com.*, 190 Cal. 583 [213 Pac. 969].) As stated, at the time of the injury Mrs. Allen was within the district assigned her en route to consult the deputy city clerk of Redlands, who had sworn her to the performance of her duties and who had assigned her to duty in her district. It is claimed she had no lawful right to look to Mr. Hook for advice or instructions; that he had no connection with the County of San Bernardino. While no legal relation existed between him and the County of San Bernardino, so far as the record discloses, still Mr. Hook was not a total stranger to the county. The county either authorized or permitted him to assign Mrs. Allen to her district. She might naturally have been expected to look to him for directions under the circumstances. We see nothing in the fact that Mr. Hook was not a county official. There is no claim that Mrs. Allen was loitering along the street when injured. The nature of her employment would naturally take her upon the streets, and it may be assumed that it was within the contemplation of both parties that she would go upon the streets to secure registrations. The risks common to travel upon the streets are recognized as incidental to many kinds of employment. The cases of messengers and solicitors furnish close analogies. (*Frigidaire Corp.* v. *Industrial Acc. Com.*, 103 Cal. App. 27 [283 Pac. 974]; *Real Silk Hosiery Mills, Inc.*, v. *Industrial Acc. Com.*, 86 Cal. App. 189 [260 Pac. 807]; *Makins* v. *Industrial Acc. Com.*, 198 Cal. 698 [247 Pac. 202, 49 A. L. R. 411].) In the last-mentioned case the district assigned to a carrier of newspapers was held to be the employee's place of employment within the meaning of the Compensation Act. Ordinarily, the purpose of the act of the employee out of which the injury arose, rather than the method of its performance, determines whether he was injured while within the course of his employment, unless the act, even though intended to forward the purpose of the employer, was of such an excep-

tional and unusual nature that it could not reasonably be said to be within the scope of the employment. (*Standard L. Co.* v. *Industrial Acc. Com.*, 60 Cal. App. 331 [212 Pac. 720].) In this case we may inquire whether the trip undertaken by Mrs. Allen was personal to her or in behalf of her employer. In view of her assignment to a particular district by the deputy city clerk, the restriction thereby put upon her in the matter of registering electors, and the particular question that arose as to the registration of the teachers, we think there was nothing personal about the inquiry she proposed to make of the deputy city clerk and the trip undertaken for that purpose. It had to do only with the employment and was in behalf of the employer. 'An employee is in the "course of his employment" when he does those reasonable things which his contract with his employer expressly or impliedly permits him to do.' (*Hartford A. & I. Co.* v. *Industrial Acc. Com.*, 202 Cal. 688, 691, 692 [262 Pac. 309, 310, 58 A. L. R. 1392].) ■ On what we regard as sufficient evidence the Commission has determined in effect that the employee was engaged in the performance of an act impliedly permitted by her employer, and has concluded that she was then in the course of her employment. With that decision of the Commission we cannot interfere."

■ Petitioner also makes the point that the Commission erred in allowing certain charges made for medical care and treatment. We are satisfied, from a careful study of the record, that the evidence before the Commission was sufficient to justify its determination in this regard, and that no useful purpose would be served by a detailed enumeration of the items and the supporting evidence.

■ The important question in this appeal, for the consideration of which this court ordered a hearing, is whether the Commission should have granted to petitioner, the employer, a credit for a portion of the amount received by settlement with the third party. It appears that in making the settlement, the parties had in mind the sum of $2,500 as compensation for the injury, and $1,000 for pain and suffering. Since the elements of pain and suffering are not compensable by the Commission (see *Jacobsen* v. *Industrial Acc. Com.*, 212 Cal. 440 [299 Pac. 66]), the county makes no claim for credit as to that sum which represents these elements, but does seek a credit in the sum of $2,500, on its

liability for compensation under the Workmen's Compensation Act.

Prior to the decisions of this court in *Jacobsen* v. *Industrial Acc. Com.*, *supra*, and *Zurich Gen. Acc. etc. Ins. Co.* v. *Industrial Acc. Com.*, 212 Cal. 451 [299 Pac. 70], the Commission had established the practice of granting credit to the employer on his liability for compensation, for the purpose of avoiding a double recovery by the employee. In the Jacobsen case we held that this practice was unauthorized by the statute, which gave the employer the remedy of asserting a *lien* in any *action* brought by the employee against the third party. We held also that failure to assert the lien in that manner was a waiver thereof, and that the Commission had no power to take care of this omission by a mere rule of practice. It will be observed that the Jacobsen case differs from the instant case in two important particulars. First, in the instant case there was no action brought by the employee; a private settlement was effected by her. Hence there was no opportunity for the employer to assert a lien as provided by the statute. Second, the employee made the settlement without notice to the employer, in violation of the express terms of the statute, and hence the employer was not in a position to assert and protect its rights. That these distinctions are of importance is indicated by the language of the Zurich Gen. Acc. etc. Ins. Co. case, *supra*, as follows: "From what has been said in the Jacobsen case and in this opinion, it should be understood that the problem presented and determined applies only to cases where the employee recovers a judgment against a third party tortfeasor in an action for damages for the negligence of the latter. The power of the Commission *otherwise to order credits and liens under the act is not affected.*" (212 Cal. 453 [299 Pac. 71].) There is nothing in these decisions which denies to the Commission the power to grant a credit in cases where no action is brought by the employee, and no waiver of the employer's lien may be implied.

It is suggested, however, that since the employee entered into the settlement without notice to the employer and consequently in violation of the act, the settlement agreement was void, and the employer could claim no credit based upon receipt by the employee of money under such settlement. The implications of such a conclusion are somewhat start-

ling. On its face it results in a double recovery by the employee as a reward for her own violation of the law. In theory, of course, the employer could sue the third party for reimbursement of its expenditures for compensation, provided that the statute of limitations had not already run; as a practical matter, it would seem that the statute has already barred this right of action. However, the statute may not, perhaps, have run upon the right of the third party to recover money paid to the employee under a void contract, in which case the responsible third party might be wholly absolved, and the innocent employer held responsible for full compensation, and all because of the wrongful act of the employee. The absurdity of this result both on the merits and because of the multiplicity of suits which it engenders indicates the unsoundness of the view contended for. In our opinion, the provision of the statute requiring notice to the employer is intended solely for his benefit, and a violation thereof should, no doubt, render the settlement voidable at his election, but certainly not void where the result would be injurious to his interests. It should not be possible for the employee, having received the benefits of the settlement, thereafter to assert its invalidity in order to reap a further profit. The settlement must, we think, be considered valid as against the employee because the employer does not attack its validity, and the employee has received a benefit therefrom.

No positive statutory provision operates, as it did in the Jacobsen case, to prevent the granting of a credit in this proceeding. The evidence of segregation made by the parties of the sums received in settlement was sufficiently clear and definite for the Commission to determine that $1,000 thereof was allocated to pain and suffering, and that this item should not be included in the credit. It would seem, therefore, that the Commission, in order to prevent a gross perversion of the purpose of the statute, should grant the requested credit.

We reach this same conclusion on another ground. In 1931, following the decision in the Jacobsen case, the legislature amended section 26 of the Workmen's Compensation Act to provide expressly for the power denied in that case. The relevant provision now reads: ''The Commission is empowered to and shall allow a credit to the employer to be

applied against his liability for compensation the amount of any recovery by the employee for his injury, either by settlement or after judgment, that has not theretofore been applied to reimburse the employer.'' While the injury to Mrs. Allen was sustained prior to the enactment of this amendment, the decision and award of the Commission, which are here attacked, were made after the amendment went into effect. How, then, could the Commission disregard it in arriving at its determination? As a matter of interpretation, the amendment in its language plainly applies to any case before the Commission at the time of its effective operation. There is nothing in its wording to suggest that it was not intended to apply to cases where the *injury* occurred prior thereto. Nor is there any policy opposed to such application. The amendment was designed to permit the Commission to do what the court theretofore alone could do—prevent double recovery by crediting the employer with the employee's recovery against the third party. Its application in the instant case would avoid a multiplicity of actions and the unfair result already discussed.

■ The same factors determine the question of constitutionality. Assuming that the statute, as above interpreted, may be called a retrospective law because it applies to a situation which took place before its enactment, this by no means leads to the conclusion that its application violates the Constitution. ■ Invalid retrospective legislation falls into three classes: *ex post facto* laws, or retrospective criminal statutes; laws impairing the obligation of contract; and laws which deprive a person of a vested right. (See *Los Angeles* v. *Oliver*, 102 Cal. App. 299 [283 Pac. 298].) It is obvious that no contract obligation would be impaired by the construction herein placed upon the statute, and the only remaining question is whether a vested right has been curtailed or destroyed, in violation of the constitutional guarantee of due process of law. Here it is also obvious that the constitutional inhibition does not apply, for the amendment to the statute applies solely to procedure, and does not affect the substantive rights of the employee. As already pointed out, the employee has no right, under the statute, to a double recovery for the injury; and the statute in force at the time of the injury gave the employer the

right to obtain, and the court the power to grant, a lien upon the judgment in reimbursement of expenditures for compensation. This lien, in purpose and effect, is the exact equivalent of the credit which is now granted by the Commission. The change is simply in the manner in which and the body by which it is granted. Nothing to which the employee was formerly entitled has been taken away. A limitation upon his rights which formerly existed is simply made easier to apply, in the same proceeding in which compensation is sought, instead of solely in a court in which an action may be brought.

In *Los Angeles* v. *Oliver, supra,* numerous cases were reviewed, and the governing principle was correctly stated, as follows (102 Cal. App. 315): "It is a well-settled rule of law that the legislature may change rules of procedure, or remedies, and that such changes may be made applicable to pending actions, provided, of course, that under the guise of a mere change of procedure or substitution of remedies vested rights are not destroyed or the obligation of contracts impaired (*Buck* v. *Canty,* 162 Cal. 226 [121 Pac. 924]; *Aikins* v. *Kingsbury,* 170 Cal. 674 [151 Pac. 145]; *Bassford* v. *Earl,* 172 Cal. 653 [158 Pac. 124]); and so long as a reasonably efficient remedy remains (*Kerckhoff-Cuzner Mill & Lumber Co.* v. *Olmstead,* 85 Cal. 80 [24 Pac. 648]; *Lantz* v. *Fishburn,* 17 Cal. App. 583 [120 Pac. 1068]). As said by Judge Cooley in his work on Constitutional Limitations, 'the bringing of suit vests in a party no right to a particular decision.' (Cooley's Constitutional Limitations, 8th ed., p. 789.) When a law only affects the remedy or procedure, 'all rights of action will be enforceable under the new procedure, without regard to whether they accrued before or after such change in the law and without regard to whether the suit had been instituted or not, unless there is a saving clause as to existing litigation.' (*People ex rel. Foote* v. *Clark,* 283 Ill. 221 [119 N. E. 329].)"

The above-quoted opinion, which dealt with the application of a statutory change to pending proceedings in eminent domain, contains other language which seems peculiarly applicable here. Quoting first from *Pacific Gas & Electric Co.* v. *Chubb,* 24 Cal. App. 265 [141 Pac. 36], it is said: " . . . the procedure by which this just compensation is to be ascertained is as much the subject of statutory law as

is the procedure by which the property is to be taken. There is no way to exercise the right of eminent domain except as prescribed by statute, and there is no way for the property owner to secure just compensation for his property except by statute law." The court in the Oliver case continues: "It would thus appear that the procedure by which the amount of compensation is to be ascertained and determined is not within, or a portion of, the right guaranteed by the Constitution and therefore vested in the property owner."

Other illustrations of this principle may be easily found. Thus, in *City of Chicago* v. *Industrial Commission*, 292 Ill. 409 [127 N. E. 46], an amendment to the Workmen's Compensation Law, limiting the time within which a writ of error to review the cause might be obtained, was applied to a case where proceedings for compensation were instituted prior to the amendment. In *Rice* v. *Dunlap*, 205 Cal. 133 [270 Pac. 196], this court held that a change in section 438 of the Code of Civil Procedure, enlarging the scope of counterclaim by a defendant, would be applicable to a new trial after a reversal, even though the plaintiff's cause of action accrued and the original action was filed before the amendment. We there said (205 Cal. 137 [270 Pac. 198]) : " . . . the defendant . . . will be entitled to the benefit of any changes in the adjective or procedural law which have been made by the legislature up to the time of the new trial." In *Maguire* v. *Cunningham*, 64 Cal. App. 536 [222 Pac. 838], it was held that the amendment of 1921 to section 738 of the Code of Civil Procedure, giving the remedy of quiet title in actions concerning personal property, was to be retroactively applied to a pending action. (See generally, note, 35 Harv. L. Rev. 193.)

The conclusion necessarily follows that the Commission erred in refusing to credit the employer on its liability for compensation, in the amount claimed. It is therefore ordered that the award be annulled, and the cause is remanded for further proceedings not inconsistent with this opinion.

Mr. Justice Curtis, deeming himself disqualified, did not participate in the foregoing opinion.