[Civ. No. 6571. Second Appellate District, Division Two.—December 3, 1929.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Respondent, y. J. G. OLIVER et al., Defendants; LEONARD J. WOODRUFF, Appellant.

300

302

J. A. Coleman and Ed. Fitzpatrick for Appellant.

Erwin P. Werner, City Attorney, and Arthur W. Nordstrom and Leslie K. Floyd, Deputies City Attorney, for Respondent.

BURNELL, J., *pro tem.*—The appellant is one of several hundred defendants in an action brought by the City of Los Angeles for the purpose of condemning some 370 separate parcels of land, one of which is owned by him, for the widening of existing streets and the opening of new streets in that city. The proceedings were taken and the action instituted under the provisions of the Street Opening Act of 1903 (Stats. 1903, p. 376, and acts amendatory thereof). Appellant makes no complaint as to the regularity or validity of any of the proceedings prior to the commencement of the action. His appeal is from the interlocutory judgment of condemnation therein.

Inasmuch as several of the numerous points on which appellant relies for a reversal relate to and involve the time at which certain of the various steps in the action were taken, it may be well at the outset to give a chronological history of the case in so far at least as is material to the questions presented for our determination.

Complaint was filed and summons issued August 6, 1926; appellant's answer was filed December 7, 1926, and the order appointing referees and setting the case for trial as to those defendants who had demanded jury trials was made July 30, 1927. Four answers were filed and several defaults entered subsequent to the last-mentioned date. The trial as to those parcels of land the owners of which had demanded jury trials was set for December 5, 1927. Appellant was not one of these, he having waived trial by court or jury; so that as to parcel 141, owned by him, the hearing was before three referees, appointed as aforesaid and was held in September, 1927. On July 29, 1927, an amendment to the Street Opening Act of 1903 went into effect, relating to the time as of which the value of land taken or damaged should be ascertained. The referees' report was filed April 12, 1928, and on May 11th the hearing on said report was set for June 4, 1928. Appellant filed his exceptions to the referees' report on May 31st. On May 24, 1928, the jury trial, as to the parcels the owners of which had demanded such trial, was had before Judge Keetch, it having been continued to that date from the time originally set. The hearing of appellant's exceptions to the report of the referees was had on July 16 and 17, 1928, before Judge Shaw. July 16th an interlocutory judgment as to the parcels involved in the jury trial was signed by Judge Keetch. On November 28, 1928, Judge Shaw signed and there was entered the interlocutory judgment with respect to those parcels as to which the trial had been before the referees, confirming the referees' report as to the compensation awarded appellant as the owner of parcel 141 and, as to the parcels of others who had filed exceptions, modifying it as to some and confirming it as to others. ■ Thereafter and within due time appellant moved for a new trial. There appears to have been no ruling on this motion, so that under the provisions of section 660 of the Code of Civil Procedure, it is

deemed to have been denied. Thereafter this appeal was perfected.

Appellant urges many grounds for reversal, most of them having to do with what we believe to be the most important question presented on this appeal, namely, the constitutionality of the amendment to the Street Opening Act of 1903 above referred to, as applied to actions pending at the time it went into effect.

At the time the proceedings were instituted which culminated in the condemnation suit, and at the time that action was commenced and summons was served upon appellant, section 10 of the Street Opening Act of 1903 stood as follows: "For the purpose of assessing the compensation and damages, the right thereto shall be deemed to have accrued at the date of the issuance of summons, and its actual value at that date shall be the measure of compensation for all property to be actually taken, and the basis of damages to property not actually taken, but injuriously affected, in all cases where such damages are allowed by the provisions of this act, *provided, that in any case in which the issue is not tried within one year after the date of the commencement of the action, unless the delay is caused by the defendant, the compensation and damages shall be deemed to have accrued at the date of trial.*" (Stats. 1925, p. 242, sec. 4.) At its session in 1927 the legislature enacted a statute amending the title and several sections of the Street Opening Act, which amendatory statute, as we have noted, went into effect July 29, 1927, and after the instant case had been set for trial. The only portions of this 1927 law with which we are here concerned are those amending section 10 above set forth and those relating to the effect of such amendment as to pending proceedings. Section 10 was amended only as to that portion which we have italicized, the portion preceding the word "provided" being left as it was before the amendment. As so amended the latter portion of the section was made to read: " . . . provided, that in any case where a motion to set the action for trial, as provided in section 8 of this act, is not made within one year after the date of the issuance of the summons therein, the right to compensation and damages shall be deemed to have accrued at the date of the hearing of the motion to set the action for trial." (Stats. 1927, p. 1146, sec. 8.) The last section

of the amendatory act of 1927 is as follows: ''Any proceeding or action for any improvement, such as is provided for in this act, or in said act to which this act is amendatory, already commenced and pending at the time this act takes effect, under or by virtue . of any ordinance of intention theretofore passed, shall, from the stage of any such proceeding or action already commenced and in progress at the time this act takes effect, be continued under the provisions of this act and it shall not be necessary to renew or conduct over again any such proceedings or actions, commenced prior to the taking effect of this act and all steps taken by the legislative body of any city in any such proceedings and any and all acts done and performed therein by any officer or officers of any city, or any and all· acts done or steps taken by any other officer. or officers in connection therewith, and such proceedings, are hereby validated, ratified, legalized and confirmed.'' (Stats. 1927, p. 1147, sec. 10.)

There can be no question but that the legislature intended to make the amendments of 1927 applicable to pending matters. The last-quoted section makes that clear beyond reasonable controversy. Appellant earnestly contends, however, that it had no power to do this, because the Constitutions, state and national, guaranteed him the right to just compensation upon the taking of his property for public purposes, and he had a vested right to have the amount of that compensation ascertained in the manner and as of the time specified by the law as it stood when the action was commenced, namely, as of the date of the trial, and that the ascertainment of the value of his property as of the date of the issuance of summons operated to deprive him of a substantial part of the just compensation to which he was entitled under the constitutional guaranties and thus deprived him of vested rights. In this connection it must be borne in mind that while the trial as to appellant's land was had more than one year after the commencement of the action, the order setting the case for trial was made before the expiration of the year. If, therefore, the amendment of 1927 to section 10 of the Street Opening Act was constitutional and applicable to pending actions, the date as of which value was to be ascertained and compensation awarded was August 6, 1926, that being the date of issuance of the summons; while if the amendment was unconstitutional as ap-

plied to pending actions and the case should have been tried under the statute as it stood when the complaint was filed, the proper date was some twenty-three months later.

Upon this question of the applicability of the 1927 amendment to the pending action two able and learned judges have disagreed. Judge Keetch, presiding at the jury trial, in which appellant's land was not involved, ruled, and instructed the jury, that the date as of which the value of the land taken and the amount of severance damages was to be ascertained was the date of the trial; Judge Shaw, before whom was heard the referees' report and the exceptions thereto, ruled that the date to be considered for this purpose was the date of issuance of summons in the action. Appellant bases one of the points upon which he relies for a reversal, to which we shall later advert, upon the conflicting rulings of these two able trial judges.

 There is no question but that the statute of 1927 is, so far as this case is concerned, a retroactive or retrospective law. These terms are used synonymously (*Rairden* v. *Holden,* 15 Ohio St. 207; *Gray* v. *Toledo,* 80 Ohio St. 445 [89 N. E. 12]) to denote a law which operates on' matters which have occurred, or rights or obligations which existed, before the time the law went into effect. (*Smith* v. *Mathews,* 155 Cal. 752, 761 [103 Pac. 199]; *People* v. *Allied Architects Assn.,* 201 Cal. 428, 436 [257 Pac. 511].) While the Constitutions of some of the states forbid the enactment of retrospective laws (Cooley's Constitutional Limitations, 8th ed., p. 773), our own contains no such inhibition, nor is there any provision of the United States Constitution that prohibits a state from passing laws of this nature. In *Baltimore & Susquehanna R. R. Co.* v. *Nesbit,* 10 How. (U. S.) 395, 401 [13 L. Ed. 469], the United States Supreme Court said: "That there exists a power in the state governments to enact retrospective or retroactive laws is a point too well settled to admit of question at this day. The only limit upon this power in the states by the federal Constitution, and therefore the only source of cognizance or control with respect to that power existing in this court, is the provision that these retrospective laws shall not be such as are technically *ex post facto,* or such as impair the obligation of contracts." In the earlier case of *Watson* v. *Mercer,* 8 Pet. (U. S.) 110 [8 L. Ed. 876, see, also, Rose's U. S.

Notes], the same court had held: "It is clear that this court has no right to pronounce an act of the state legislature void, as contrary to the Constitution of the United States, from the mere fact that it divests antecedent vested rights of property. The Constitution of the United States does not prohibit the states from passing retrospective laws generally, but only *ex post facto* laws. Now, it has been solemnly settled by this court that the phrase *ex post facto* is not applicable to civil laws, but to penal and criminal laws."

In California it has been held "that it is no objection to the validity of a statute to say that it is retrospective in its operation." (*Pignaz* v. *Burnett,* 119 Cal. 157 [51 Pac. 48, 49]. See, also, *Von Schmidt* v. *Huntington,* 1 Cal. 55; *Baird* v. *Monroe,* 150 Cal. 560 [89 Pac. 352], and *Craycroft* v. *Superior Court,* 18 Cal. App. 781 [124 Pac. 1042].) As to such a law the element of its retrospective action enters into the consideration of its constitutionality only for the purpose of determining whether or not it interferes with some right vested before its enactment or whether it impairs the obligation of a contract. As said in *Galland* v. *Lewis,* 26 Cal. 46: "In all cases where laws confessedly retrospective have been declared void, it has been upon the ground that such laws were in conflict with some vested right, secured either by some constitutional guarantee or protected by the principles of universal justice." Again, in *Pignaz* v. *Burnett, supra,* following the statement above quoted from that case the court said: "The question is, Is the amendment an *ex post facto* law, or does it impair the obligation of contracts? And, also, perhaps, whether it deprives anyone of vested rights. If it does none of these things it is no objection to it that it applies to pending cases or past transactions." In the present case the only one of these questions with which we are at all concerned is that relating to vested rights, this being a civil action and the element of contract not being involved.

■ A "vested right," as that term is used in relation to constitutional guaranties, implies an interest "which it is proper for the state to recognize and protect, and of which the individual could not be deprived arbitrarily without injustice" (6 R. C. L. 308; *Campbell* v. *Holt,* 115 U. S. 620 [29 L. Ed. 483, 6 Sup. Ct. Rep. 209, see, also, Rose's U. S. Notes]). ■ Thus it may be said that so far as the ex-

ercise of the right of eminent domain is concerned the right vested in the individual owner of property is that his property "shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for, the owner . . . " (Sec. 14, art. I, Const. of California.) ■ The phrase "just compensation" means the value of the land taken and the damage, if any, to land not taken, but the value of which has been diminished by reason of the severance therefrom of the parcel taken. More than this it does not imply. (*Pacific Gas & Electric Co.* v. *Chubb*, 24 Cal. App. 265 [141 Pac. 36].) "The adjective 'just' only emphasizes what would be true if omitted—namely, that the compensation should be equivalent to the property" (*Monongahela Nav. Co.* v. *United States*, 148 U. S. 312 [37 L. Ed. 463, 13 Sup. Ct. Rep. 622, see, also, Rose's U. S. Notes]). ■ Beyond providing that this compensation "shall be ascertained by a jury, unless a jury be waived," as it was by appellant in the instant case, the Constitution contains no provisions as to the procedure by which the amount of the compensation—the value of the land taken—is to be established. Consequently, "the procedure by which this just compensation is to be ascertained is as much the subject of statutory law as is the procedure by which the property is to be taken. There is no way to exercise the right of eminent domain except as prescribed by statute, and there is no way for the property owner to secure just compensation for his property except by statute law." (*Pacific Gas etc. Co.* v. *Chubb, supra.*) It would thus appear that the *procedure* by which the amount of compensation is to be ascertained and determined is not within, or a portion of, the *right* guaranteed by the Constitution and therefore vested in the property owner. ■ That the fixing of some particular date as of which values shall be ascertained is a matter of procedure would seem self-evident. As said in *City of Pasadena* v. *Porter*, 201 Cal. 381 [53 A. L. R. 679, 257 Pac. 526, 530], "it is necessary, for the purpose of assessing compensation and damages in eminent domain proceedings, that the right thereto shall be deemed to have accrued at a fixed date." Or, to state it in a slightly different manner, "the value of the property at some period antedating the judgment could alone be awarded to the owner, because the award must be made by

the judgment.'' (*California Southern R. R. Co.* v. *Kimball,* 61 Cal. 90.) The legislature, in providing a method of procedure for the ascertainment of the compensation guaranteed by the Constitution, has seen fit to designate the date of the issuance of the summons as the date as of which such compensation shall be ascertained in actions instituted under the Street Opening Act of 1903—subject to the provisos contained in section 10 of that act as it stood at the time this action was commenced and as thereafter amended. It might with equal authority have designated for that purpose the date of the filing of the last answer to be filed, or any other date between that of the commencement of the action and the rendition of a judgment therein. It has frequently been held that the fixing of a particular date as a time basis for the estimation of property values in condemnation suits is not a legislative interference with the right to just compensation guaranteed by the Constitution —which is but another way of stating that there is no vested right to have compensation assessed as of any particular date. Thus, in *California Southern R. R. Co.* v. *Kimball, supra,* it was contended that the code provision relating to proceedings in eminent domain in general and fixing the date as of which compensation was to be ascertained as the date of issuance of the summons (sec. 1249, Code Civ. Proc.) was in conflict with the constitutional guarantee as to just compensation, and that the value should be fixed as of the time of the actual taking. Rejecting this contention the court said: ''And the Constitution simply means that the compensation awarded in the manner prescribed by law shall be paid to the owner before his property shall be taken for public use.'' This decision has been referred to with approval in a number of later cases. (*Tehama County* v. *Bryan,* 68 Cal. 57 [8 Pac. 673]; *San Jose etc. R. R. Co.* v. *Mayne,* 83 Cal. 566 [23 Pac. 522]; *Los Angeles* v. *Pomeroy,* 124 Cal. 597 [57 Pac. 585]; *Sacramento Terminal Co.* v. *McDougall,* 19 Cal. App. 562 [126 Pac. 503]; *Marin Municipal Water District* v. *Marin Water & Power Co.,* 178 Cal. 308 [173 Pac. 469, 471].) In the case last cited it was urged that the provisions of section 47 of the Public Utilities Act (Stats. 1911 [Ex. Sess.], p. 42), relating to condemnation, were unconstitutional. Construing the section and answering this contention the court said:

"The effect of section 47 is to provide a scheme for the condemnation of property by the public corporations mentioned therein, by a proceeding wherein the value is to be fixed by the railroad commission, and the right and power of such public corporation to condemn the property is to be determined by the superior court. The enforcement thereof is also given over to the superior court. The appellant contends that if it shall be construed to provide for the taking of the property at the time of the judgment in the superior court, upon payment of the value previously fixed by the commission, it would be unconstitutional. The argument is that the owner is entitled to the value of the property at the time it is taken, and that he cannot be deprived thereof for public use upon payment as compensation of the value fixed at a previous time, unless it shall appear that there has been no increase in value up to the time it is taken. So far as the provisions of the Constitution of California are concerned, the proposition is without merit. . . . Nor is the enactment, we think, violative of the clauses of the federal Constitution prohibiting a state from depriving a person of his property without due process of law, or denying him the equal protection of the laws. It is not to be doubted that, irrespective of any more specific requirements in state constitutions, the due process clause of the fourteenth amendment requires compensation to be made or secured to the owner of private property taken by authority of the state for public use. (*Chicago, B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 226 [41 L. Ed. 979, 17 Sup. Ct. Rep. 581, see, also, Rose's U. S. Notes].) But section 47 of the Public Utilities Act provides in express terms for the ascertainment, and the payment to the owner, of 'just compensation' for property taken. It is contended that the scheme of valuation is not fair to the owners of public utilities, *in that the value is fixed as of the time of the hearing by the railroad commission, which must precede the commencement of the formal condemnation suit.* Under the general law relative to eminent domain, the value of property taken is assessed as of the date of the issuance of summons. (Code Civ. Proc., sec. 1249.) It is settled by our decisions that this rule (the equivalent of which is found in many other states, 15 Cyc. 721) involves no violation of constitutional right. (Citing cases.) On analysis it will be found that

the distinction between the code provisions and those of the Public Utilities Act is formal rather than substantial. Section 47 creates a special proceeding in eminent domain. The ascertainment of value by the railroad commission, and the subsequent action in the superior court, in which the previous finding of value is made conclusive, are both parts of that proceeding. *The hearing by the commission on the question of value is merely a step in the litigation prosecuted to enforce the right of eminent domain.* In effect, therefore, the value is fixed as of the date of the institution of the condemnation proceeding, as it is in cases prosecuted under the code sections alone." (Italics ours.)

In *City of Pasadena* v. *Porter, supra,* a similar point was raised as to the very section of the Street Opening Act of 1903 involved in this case. That section as it then stood read: "For the purpose of assessing the compensation and damages, the right thereto shall be deemed to have accrued at the date of the order appointing referees or of the order setting the cause for trial, as the case may be . . . " (Stats. 1909, p. 1038, sec. 5.) Examination of the transcript in the case cited discloses that the complaint was filed and summons issued July 11, 1924, that the order appointing referees was made January 23, 1925, and that the hearing of the referees' report and the exceptions thereto was had July 20, 1925. The chief bone of contention was the allocation of the compensation as between the owner of the fee in certain land taken and the owner's lessee. Both the referees and the court had, at the respective hearings, accepted January 23, 1925, as the date from which damages should be computed. The appellant owner contended "that the damages awarded the tenant should date only from the time of the actual loss of possession by the tenant" and that the amount awarded the tenant was excessive "because it includes an allowance for account of rent for a period between the date of the appointment of the referees and the date of the final decree, or the date when the tenant will lose possession, during all of which period the Gekco Company has had, and will retain, the possession, use and enjoyment of the entire premises. Such a proceeding, she asserts, amounts to a violation of article I, section 14, of the state Constitution, which provides that private property shall not be taken or damaged for public use without just com-

pensation having first been made to, or paid into court for, the owner." Answering this argument the court in that case said: "There is no merit in the contention. It is necessary, for the purpose of assessing compensation and damages in eminent domain proceedings, that the right thereto shall be deemed to have accrued at a fixed date. Under the general law relative to eminent domain, the value of property taken is assessed as of the date of the issuance of the summons. (Code Civ. Proc., sec. 1249.) It is settled by the decisions that this rule, the equivalent of which is found in many states, involves no violation of constitutional right. (*California Southern R. R.* v. *Kimball,* 61 Cal. 90; *Marin Municipal Water Dist.* v. *Marin W. & P. Co.,* 178 Cal. 308, 314 [173 Pac. 469], and cases cited.) On analysis, it will be found that the distinction between the provision of the code section and that of the Street Opening Act, *supra,* is formal, rather than substantial, as it was held to be between the code section and the provisions of the Public Utilities Act considered in the cases just cited." ▮ It seems clear to us that the foregoing authorities amply sustain the proposition that the constitutionally guaranteed right to receive just compensation for property taken or damaged for public purposes neither includes nor implies the right to have such compensation ascertained by any particular procedure or as of any certain date.

▮ It is a well-settled rule of law that the legislature may change rules of procedure, or remedies, and that such changes may be made applicable to pending actions, provided, of course, that under the guise of a mere change of procedure or substitution of remedies vested rights are not destroyed or the obligation of contracts impaired (*Buck* v. *Canty,* 162 Cal. 226 [121 Pac. 924]; *Aikins* v. *Kingsbury,* 170 Cal. 674 [151 Pac. 145]; *Bassford* v. *Earl,* 172 Cal. 653 [158 Pac. 124]), and so long as a reasonably efficient remedy remains (*Kerckhoff-Cuzner Mill and Lumber Co.* v. *Olmstead,* 85 Cal. 80 [24 Pac. 648]; *Lantz* v. *Fishburn,* 17 Cal. App. 583 [120 Pac. 1068]). As said by Judge Cooley in his work on Constitutional Limitations, "the bringing of suit vests in a party no right to a particular decision." (Cooley's Constitutional Limitations, 8th ed., p. 789.) ▮ When a law only affects the remedy or procedure, "all rights of action will be enforceable under the new proce-

dure, without regard to whether they accrued before or after such change in the law and without regard to whether the suit had been instituted or not, unless there is a saving clause as to existing litigation." (*People ex rel. Foote* v. *Clark*, 283 Ill. 221 [119 N. E. 329].)

These principles apply in proceedings in eminent domain as well as in those of a different nature. As said in *Secombe* .v. *Milwaukee & St. Paul Ry. Co.*, 23 Wall. (U. S.) 108, 117 [23 L. Ed. 67]: "It is no longer an open question in this country that the *mode* of exercising the right of eminent domain, in the absence of any provision in the organic law prescribing a contrary course, is within the discretion of the legislature." (Italics ours.) The same principle is thus enunciated in *Springfield etc. R. R. Co.* v. *Hall*, 67 Ill. 99: "The state has the right to say on what terms it will allow its right of eminent domain to be exercised, so long as anything remains to be done by the corporation in order to complete the condemnation of the land"; and as held in *St. Joseph etc. R. R. Co.* v. *Shambaugh*, 106 Mo. 557 [17 S. W. 581], it is competent for the legislature to change the method or procedure to be used in assessing damages for condemnation as to pending actions. "The rule of law upon this subject is, that whatever belongs merely to the remedy, adapted for the acquisition of a right, may be altered according to the will of the state, provided the alteration does not impair the obligation of a contract; and such a result is not worked where a substantial remedy is left to the parties according to the ordinary course of justice." (*Long's Appeal*, 87 Pa. St. 114.) The appellant in that case was the owner of land sought to be condemned by a railroad company, under the power of eminent domain delegated to it by the state. The law at the time the proceedings were commenced provided for the ascertainment of compensation by "viewers," no right of appeal from their report being given to either party. Prior to the hearing as to value a new law went into effect which gave either party a right of appeal from the assessment of the viewers. Long took such appeal, and on motion of the railroad company it was "struck off," or as we would say in this state, dismissed, and from the decree of dismissal Long appealed to the Supreme Court. We again quote from the opinion: "Here, then, we have the two rights clearly defined and recognized; the company's

right to take the property of the citizen and the citizen's right to compensation. What remains is but a question of remedy. If the parties cannot agree upon the value of the property taken, some means must be provided by which it can be ascertained, and the owner must have some method by which he may enforce payment. The remedy is to be found in the 4th section of the Act of March 27th, 1848. (The procedure for ascertainment of damages, as above set forth, is here described.) . . . This, then, is the remedy prescribed, the means to be used in order to secure to the owner the value of his property. It is, however, but a remedy, *and it neither enlarges nor abridges the rights vested in either party.* Such being the case, we cannot see why the lawmaking power may not only amend the present remedy, but even substitute a new one, provided there be no interference with the company's franchise or the citizen's right.'' (Italics ours.)

To a similar effect is the decision in *Title Insurance & Trust Co.* v. *Lusk et al.,* 15 Cal. App. 358 [115 Pac. 53, 54]. There the proceedings were for the widening of a street under the same act involved in this case. The condemnation action was commenced in 1907 and the interlocutory judgment awarding compensation for property taken and damaged was entered in January of 1910. Thereafter, in conformity with the procedure provided in the act, an assessment on the property declared to be benefited by the improvement was prepared and filed with the clerk of the city council, to which assessment protests were filed by certain of the owners of the property assessed to pay for the cost of the improvement, including, of course, the damages awarded. November 15, 1910, these protests were sustained by the council, but that body failed and refused to either confirm, modify or correct the assessment or to order a new assessment, but instead directed the preparation of an ordinance abandoning the proceedings. At the time the condemnation suit was commenced, the act of 1903 permitted the city to abandon the proceedings by ordinance and to dismiss the action without prejudice *at any time prior to the payment of the compensation* awarded to the defendant property owners, but in 1909 section 14, containing this provision, was amended so as to provide that the city council might *at any time prior to the entry of the interlocutory*

*judgment* abandon the proceedings and cause the action to be dismissed. (Stats. 1909, p. 1040, sec. 8.) Section 11 of the amendatory act of 1909 (Stats. 1909, p. 1042) provided that it should apply to pending proceedings and actions thereunder. Certain of the property owners, defendants in the condemnation action, applied to this court for a writ of mandate to compel the respondents, as members of and composing the city council, to proceed and confirm, correct or modify the assessment, or order a new assessment, their position being that as the interlocutory judgment had been entered the council had lost jurisdiction to abandon the proceedings and that its plain duty under the law was to act upon the assessment. On the other hand it was argued that the provisions of the act as it stood at the time the action was commenced governed, and hence that the right to abandon could be exercised at any time before the compensation awarded in the interlocutory judgment was paid, and that the application of the 1909 amendment would operate to impair a vested right. The court held: "This section affects a remedy as distinguished from a right. Remedies must always be under the control of the legislature, and where a reasonable remedy is provided it is immaterial that it alters one previously existing."

A consideration of the authorities just passed in review, and especially those immediately preceding the one last noted, inspires a somewhat different but closely related view of the point now under scrutiny. The Constitution provides for the taking of private property for public use upon the rendition of just compensation. ██ It is not worth while to cite authority for the practically self-evident statement that the moment when, in a long chain of proceedings, the taking is deemed actually to occur is necessarily a matter for legislative determination. Now it is plain that a declaration that the value of the property to be taken is to be ascertained as of a certain time is practically equivalent to a statement that the time named is that upon which the taking is to be deemed to have occurred. ██ Again, if the legislature is to fix the time of taking it is evident that the power is a continuing one and that an original exercise of it neither exhausts it nor affects the right to change the time first fixed as often as to the legislative will may seem expedient. Therefore, if the legislature fixes the time of

taking, in effect, by determining the period at which, during the long chain of proceedings, the value of the property to be taken is to be ascertained, that body may change at its will the designation of the moment as of which the value is to be ascertained, without a deprivation of the various constitutional guaranties above mentioned. So much seems to have been settled by the authorities to which we have above referred.

We have discussed at some length the constitutional question which enters into a number of the points raised by appellant for the reason that this is a case of first impression in this state and, as far as we have been able to discover, elsewhere. ▆▆ Our conclusion is that the right vested by the Constitution in the owner of property to receive just compensation upon the taking thereof does not include the right to have that compensation ascertained and assessed in any particular mode or as of any particular time, and that the amendment affecting the date as of which the value of appellant's land was to be ascertained was one relating merely to procedure which it was within the power of the legislature to make applicable to pending actions.

▆▆ Our ruling on the point just discussed is of course determinative of appellant's contentions that the court below erred in overruling his objection to the hearing of the referees' report for the reason that the value of his property was fixed therein as of the date of the issuance of the summons and in its rulings on certain objections to evidence as to value, which objections were based on appellant's theory as to the unconstitutionality of the 1927 amendment, as well as his claim that the court erred in rejecting his offer to prove the value of the land as of the date of the hearing of the exceptions. ▆▆ As to the last-mentioned point it suffices to say that there can be no error in rejecting an offer to prove where the evidence if admitted would have been irrelevant or immaterial (*Logan* v. *McMullen*, 4 Cal. App. 154 [87 Pac. 285]), and since, as we have held, the amendment of 1927 to section 10 was applicable, the value of appellant's property at a time subsequent to that of the issuance of the summons was immaterial.

▆▆ Appellant further contends that section 10 of the act in question violates section 11, article I, of the state Constitution, which requires that "all laws of a general nature

shall have a uniform operation." His position as to this contention is thus stated in his opening brief on this appeal: "The provisions of the 1927 amendment of 1903 act conflict with Sec. 1249 C. C. P. on the same subject of just compensation, in this, the 1927 amendment provides that the date of value shall be as of issuance of summons, provided, that the motion to set the case for trial is not made within one year after issuance of summons, and in that case then the date of value shall be for all parties as of that date only, that is, the date of hearing the motion to set the action for trial. While under Sec. 1249, Code Civ. Proc., there may be various dates, that is, there may be a new date upon the trial of each parcel tried separately by the court or by the referees. That with the two statutes as they now stand a person who should be named in a proceeding under 1903 act is restricted to either date of summons or of date of motion to set case for trial. While persons that may be named in proceedings commenced under the general law may have their values fixed as of date of summons or as of date of trial. Therefore, the laws prescribed for fixing date of value for just compensation cannot operate uniformly on all persons in the same category, and upon rights and things in the same relation for that, those named under the general law are entitled to various dates depending upon time when their trials would be heard." There is no merit in this contention. The section as amended operates uniformly upon all persons whose property is sought to be acquired under the provisions of, and for the purposes stated in, the Street Opening Act of 1903, and upon the property of such persons. ■■■ The legislature may, without violating the constitutional provision above quoted, classify subjects either of regulation or of procedure and enact laws applicable to all within the same class, provided of course, that such laws apply "equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction" and do not confer "particular disabilities or burdensome conditions, in the exercise of a common right, upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of, the law." (*City of Pasadena* v. *Stimson*, 91 Cal. 238, 251 [27 Pac. 604, 607].) As said in *Matter of Stoltenberg*, 165 Cal. 789, 792 [134 Pac. 971, 972]: "It needs no

argument, of course, to show that, while constitutional provisions prohibit arbitrary discrimination in favor of or against selected individuals or groups, it is within the legislative power to classify subjects of regulation and to pass laws applicable to all of a class (*In re Zhizhuzza*, 147 Cal. 328 [81 Pac. 955]), provided that the classification so made be founded upon some reasonable, intrinsic basis of differentiation.'' Again, quoting from *Ex parte Sohncke*, 148 Cal. 262 [113 Am. St. Rep. 236, 7 Ann. Cas. 475, 2 L. R. A. (N. S.) 813, 82 Pac. 956 958]: ''A law which applies alike to all subjects upon which it acts, or, in other words, a law which applies equally to all persons or things within a legitimate class to which, alone, it is addressed, does not violate the provision requiring laws of a general nature to have a uniform operation, and it is neither local nor special.'' And as said in *Hellman* v. *Shoulters*, 114 Cal. 147 [44 Pac. 915, 918] : ''It has been uniformly held that a law is general which applies to all of a class—the classification being a proper one—and that the requirement of uniformity is satisfied if it applies to all of the class alike.'' To the same effect are the decisions in *Ex parte Halsted*, 89 Cal. 472 [26 Pac. 961] , *Cody* v. *Murphey*, 89 Cal. 524 [26 Pac. 1081] , *Abeel* v. *Clark*, 84 Cal. 230 [24 Pac. 383] , *Summerland* v. *Bicknell*, 111 Cal. 569 [44 Pac. 232], and *Johnson* v. *Gunn*, 148 Cal. 745 [84 Pac. 665]. ''Procedure may not be said to be special because it is peculiar to the character of the action with reference to which it is prescribed.'' (*Title Insurance & Trust Co.* v. *Lusk*, *supra; People ex rel. Swindell* v. *City of Los Angeles*, 93 Cal. App. 532 [269 Pac. 934].)

One of the objections urged against the constitutionality of the Public Utilities Act in *Marin Municipal Water District* v. *Marin Water etc. Co., supra,* was based upon an alleged discrimination between the mode of condemning property under the general law and that provided by section 47 of the act for condemning the property of public utilities in certain cases. Answering this objection, the Supreme Court said: ''None of these discriminations, we have seen, goes to any matter of essential justice or fundamental right. The constitutional provision under consideration does not prohibit a state from establishing different rules of procedure for different classes of cases or of litigants, provided

the variations relate merely to matters of procedure, and do not operate to deprive any class of substantial equality in the adjudication of its rights or liabilities. (12 C. J. 948; *Cincinnati St. Ry. Co.* v. *Snell*, 193 U. S. 30 [48 L. Ed. 604, 24 Sup. Ct. Rep. 319, see, also, Rose's U. S. Notes]; *Cook* v. *Ray Mfg. Co.*, 159 Cal. 694 [115 Pac. 318].) In condemnation proceedings, so long as the state provides a fair and equitable judicial inquiry, in which the parties interested are allowed to be heard and present evidence, and are protected in their right to have just compensation, they are not deprived of the equal protection of the laws because the state, under authority of its own constitution, has seen fit to provide for other classes of cases a different method or a different tribunal for accomplishing the same result. (*South Carolina etc. R. Co.* v. *American Tel. & Tel. Co.*, 65 S. C. 459 [43 S. E. 970]; *Kennebec Water Dist.* v. *Waterville*, 96 Me. 234 [52 Atl. 774].) Whether the property of public utilities forms a class which may fairly be thought to require a different kind of procedure from that adopted for the taking of other property by eminent domain is primarily a question for the state itself.'' (178 Cal. 316 [173 Pac. 482], *supra.*)

 Turning from these statements of the general rule to the application thereof to the point urged by appellant, we find that it has been uniformly held that laws relating to the acquisition of private property by municipal corporations for public improvements and prescribing the manner in which the right of eminent domain shall be exercised by such municipalities as well as the procedure to be followed in actions to enforce that right are to be regarded as general laws relating to all persons in a class founded upon a sufficient legal distinction. Thus in *Clute* v. *Turner*, 157 Cal. 73 [106 Pac. 240, 242], where it was contended that the Street Opening Act of 1889 (Stats. 1889, p. 70) was unconstitutional because not a general law, it was said: ''The class to which the act applies is a well recognized class, to which general legislation of the character mentioned in the title of the act may be addressed—namely, municipalities, and the ·subject of that legislation, the laying out and opening of streets and other public places, is one usually committed to such municipalities, either by charter or general laws, as matter of municipal concern, and a law which

provides for all municipalities a system for opening and extending streets and kindred matters, such as are embraced in the title to the act, is uniform in its operation." (See, also, *Davies* v. *City of Los Angeles*, 86 Cal. 37 [24 Pac. 771], *Cohen* v. *County of Alameda*, 124 Cal. 504 [57 Pac. 377], and *Alameda* v. *Cohen*, 133 Cal. 5 [65 Pac. 127]. In *City of Los Angeles* v. *Zeller*, 176 Cal. 194 [167 Pac. 849, 850], where the proceedings involved were under the Act of 1903, the court observed that "proceedings for the opening, widening, and improving of streets in municipalities form a subject for special treatment and procedure," while in *Frank* v. *Maguire*, 201 Cal. 414 [257 Pac. 515, 518], it was held that "the act of 1903 covers a field of legislation to which the general code sections are not made adaptable, and is a law general as to all coming within its provisions," and that it "involves no unlawful discrimination."

A further attack is made by appellant upon the constitutionality of the amendment based upon the claim that both section 13 of article I of the state Constitution and the Fourteenth Amendment to the federal Constitution have been violated by the application of the provisions of the 1927 amendment to this pending case. Both of these constitutional inhibitions are against the deprivation of any person of life, liberty or property "without due process of law."

As applied to judicial proceedings the phrase "due process of law" imports an orderly proceeding adapted to the nature of the case in which a person is accorded an opportunity to be heard and to defend, enforce and·protect his rights (*County of Santa Clara* v. *Southern Pac. Ry. Co.*, 18 Fed. 385). It has the same meaning as the expression "by the law of the land," as used in Magna Carta. (*Den ex Dem. Murray's Lessee* v. *Hoboken Land etc. Co.*, 18 How. (U. S.) 272 [15 L. Ed. 372].) It means a process which, "following the forms of law, is appropriate to the case, and just to the parties to be affected. It must be pursued in the ordinary mode prescribed by the law; it must be adapted to the end to be attained; and wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought" (*Hagar* v. *Reclamation District*, 111 U. S. 701 [28 L. Ed. 569, 4 Sup. Ct. Rep. 663, 667, see, also, Rose's U. S. Notes]). It was undoubtedly the purpose of the

framers of both constitutional guaranties to secure to every person a judicial trial according to the established rules of law, before he could be deprived of either life, liberty or property (*Cohen* v. *Wright*, 22 Cal. 293, 318). Applying these principles to actions of the nature of the case before us, it was said by Mr. Justice Bradley, in his concurring opinion in *Davidson* v. *New Orleans*, 96 U. S. 97, 107 [24 L. Ed. 616, see, also, Rose's U. S. Notes], quoted in *Hagar* v. *Reclamation District, supra,* that "in judging what is 'due process of law' respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or some of these; and if found to be suitable or admissible in the special case, it will be adjudged to be 'due process of law,' but if found to be arbitrary, oppressive and unjust, it may be declared to be not 'due process of law.'" In amplification of the statement just quoted it was further held in *Davidson* v. *New Orleans, supra,* "that whenever by the laws of a state, or by state authority, a tax, assessment, servitude or other burden is imposed upon property for the public use, whether it be for the whole state or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceedings in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections." In the instant case the appellant, having been regularly served with a copy of the complaint and summons, as provided by law, in due time filed his answer; served with notice of motion to have the cause set for trial, he waived trial by jury and had a hearing before referees, in which evidence was adduced by the city on the one hand and by himself on the other; objecting to the findings and report of the referees as to the value of his property, he filed his objections thereto and was accorded a hearing thereon in the Superior Court, with an opportunity to produce evidence in support of his objections. He received notice of every step in the proceeding, and so far as the record shows was given every opportunity to present his

side of the case to an impartial tribunal. The fact that he is dissatisfied with the rulings of that tribunal on matters of law does not justify his contention that he has been deprived of due process of law. As said in *Davidson* v. *New Orleans, supra:* "There is here abundant evidence that there exists some strange misconception of the scope of this provision as found in the fourteenth amendment. In fact it would seem, from the character of many of the cases before us, and the arguments made in them, that the clause under consideration is looked upon as a means of bringing to the test of the decision of this court the abstract opinions of every unsuccessful litigant in a state court of the justice of the decision against him, and of the merits of the legislation on which such a decision may be founded."

Having disposed of the various constitutional questions presented by appellant we now turn to his claim that whether or not Judge Keetch was correct in ruling that the 1927 amendment did not apply and in instructing the jury that compensation was to be ascertained as of the date of the trial (as provided in section 10 of the Street Opening Act of 1903 prior to such amendment and as it stood when the action was commenced), his view of the law as so expressed was binding upon Judge Shaw at the subsequent hearing of the referees' report and the exceptions thereto. Appellant's argument is based upon the theory that, as held in *People* v. *Grace,* 77 Cal. App. 752 [247 Pac. 585, 588], the Superior Court is but one tribunal no matter into how many departments it may be divided, and "an order made in one department during the progress of a case can neither be ignored nor overlooked in another department in which the case falls by transfer." We dispute not the correctness of this premise, but are unable to accept the conclusion which appellant draws therefrom. An order is thus defined: "Every direction of a court or judge, made or entered in writing, and not included in a judgment, is denominated an order." (Code Civ. Proc., sec. 1003.) Manifestly, if an order has been made in the course of an action it is binding on the litigants and court alike so long as it has not been set aside. In *People* v. *Grace, supra,* an order had been made granting a defendant in a criminal case a trial as to his sanity. The case was transferred to another department of the court which proceeded to try the defend-

ant for the crime with which he was charged, entirely over-looking the previous order for a trial as to sanity. We there held that this order was as binding upon the judge sitting in the department to which the case was transferred "as if the latter judge had made it himself." The situation there was entirely different from one in which *the court* changes a ruling previously made by it on a point of law arising in the case before it. True, the court is but one tribunal and its rulings are to be regarded as the rulings of that tribunal rather than of the particular judge who happens to occupy the bench at the time they were made, the situation in its legal aspect being as though there was but one judge; but if appellant's argument be followed to its logical and ineluctable conclusion it would lead to the astounding fallacy that a judge having ruled erroneously is without power to reverse himself and thus correct his own error. This is not the law. ▮▮▮ The doctrine that a previous ruling has become the law of the case has no application except as to the decisions of appellate courts (2 Cal. Jur. 955; *Lawrence* v. *Ballou,* 37 Cal. 518). The correct rule is stated in *De La Beckwith* v. *Superior Court,* 146 Cal. 496 [80 Pac. 717, 718], as follows: "It is a most common occurrence for a trial court to change its rulings during the progress of a trial, upon questions of law, and no one would contend that it is not within its power to do so, or that it should not do so when satisfied that the former ruling was erroneous." If the court below, speaking through Judge Shaw, was convinced that it had ruled erroneously when speaking through Judge Keetch, it was not only its right but its duty to reverse its former ruling.

▮▮▮ Appellant's next point is that the complaint fails to state a cause of action in that it discloses that the sum appropriated by the city council towards the expense of the proceeding was in violation of the charter of the city of Los Angeles. Section 2 of the Street Opening Act of 1903 as amended in 1925 (Stats. 1925, p. 238, sec. 1) provides that the "city council may, in its discretion, order and declare that the whole or any percentage of, or any sum toward the expense of said improvement be paid out of the treasury of the municipality, in which case the sum or percentage to be paid shall be stated in said ordinance of intention." Section 37, article III of the city charter (Stats. 1925, pp. 1024,

1045) contains this provision: "The Council shall have power to provide for any or all of the following improvements, to-wit: . . . and to make the costs and expenses thereof, including all incidental expenses and any damages to private property occasioned thereby, to be paid from the general fund of the city or from such other fund as the council may designate; or to make such costs and expenses, including such incidental expenses and damages, a lien upon the abutting property, or upon property in districts according to benefits, which lien shall be a first lien, paramount to all other liens except those for state, county and municipal taxes; and to make and enforce provisions for the enforcement of such lien. . . . " The ordinance of intention to order the improvement which is the object of these proceedings (adoption of which was the initial step therein) is set forth as an exhibit to the complaint and by appropriate pleadings made a part thereof. Section 5 of said ordinance is as follows: "It is further ordered and declared by said City Council of the City of Los Angeles that the sum of One Hundred Forty-Eight Thousand Seven Hundred Eight and No-100 Dollars ($148,708.00) be paid towards the expense of said improvement in Section I of this ordinance described out of the treasury of said city." It is appellant's theory that the charter provision does not authorize the council to appropriate any sum less than the whole cost of the proceeding, and that some specific fund must be designated from which the expenditure is to be made.

In support of his position appellant cites the case of *O. T. Johnson Corp.* v. *City of Los Angeles,* 198 Cal. 308 [245 Pac. 164, 170]. The proceeding there involved was under the Street Opening Act of 1903 prior to the 1925 amendment of section 2 thereof, that section then providing that "said city council may, in its discretion, order and declare that the whole or any percentage of the expense of said improvement be paid out of the treasury of the municipality *from such fund as the council may designate, in which case it shall be so stated in said ordinance of intention."* The city's only authority to pay a portion of the cost of an assessment proceeding taken under the act was derived from this section of the act itself, since the charter as it then existed contained no provision of the nature of section 37 of article III above quoted. Under these circumstances and

in the light of the law as it then stood it was held that "as neither the percentage of the cost of the improvement to be borne by the city nor the fund from which such expenditure was to be made were ordered, declared, or designated in the ordinance of intention, the failure to follow the terms of the act in those respects resulted in a lack of jurisdiction to proceed." The act as it now stands and has stood during the pendency of these proceedings does not require a designation in the ordinance of the fund from which the expenditure is to be made; ■ and moreover, the city's authority is now derived not from the act but from its charter, the provisions of which are supreme and supersede all general laws inconsistent therewith as to such matters as the Constitution has authorized to be provided for in freeholders' charters (*Morgan* v. *City of Los Angeles*, 182 Cal. 301 [187 Pac. 1050]; *Kubach Co.* v. *McGuire*, 199 Cal. 215 [248 Pac. 676]; *Graham* v. *Fresno*, 151 Cal. 465 [91 Pac. 147]). Among these matters are those falling under the designation "municipal affairs" (sec. 6, art. XI, Cal. Const.), and in this category are included proceedings for the opening and widening of streets (*Sinton* v. *Ashbury*, 41 Cal. 525; *Byrne* v. *Drain*, 127 Cal. 663 [60 Pac. 433]) and for other street improvements, and in case of a conflict between a charter provision and a general improvement law the provisions of the charter will prevail (*Ransome-Crummey Co.* v. *Bennett*, 177 Cal. 560 [171 Pac. 304]; *Barber Asphalt Paving Co.* v. *Costa*, 171 Cal. 138 [152 Pac. 296]). ■ The charter does not require a designation in the ordinance of intention of the fund from which is to be paid the portion of the expense to be borne by the city, as did the section of the act involved in the O. T. Johnson case as it then read, and it does provide that it may be paid from the general fund, which is the collective designation of all moneys in the city treasury not set apart for particular purposes and which furnish the means for the support of the municipality and the defraying of the discretionary appropriations of its legislative body (*People* v. *Orange County Supervisors*, 27 Barb. (N. Y.) 575; *Smith* v. *Haney*, 73 Kan. 506 [85 Pac. 550]). An order that the payment be "out of the treasury of said city" is tantamount to an order that it be paid from the "general fund."

An objection similar to that raised by appellant was held untenable in *Frank* v. *Maguire, supra,* from the opinion in which case we again quote: "It is next contended that the act of 1903 as now in force, when read in connection with the charter of the city, requires that the fund from which the city's proportion of the expense is to be paid must be designated in the ordinance of intention. Prior to the amendment of 1925 section 2 of the act, so far as material here, read as follows: 'Said city council may, in its discretion, order and declare that the whole or any percentage of the expense of said improvement be paid out of the treasury of the municipality from such fund as the council may designate, in which case it shall be so stated in said ordinance of intention.' By the amendment of 1925 that portion of the section was made to read as follows: 'Said city council may, in its discretion, order and declare that the whole or any percentage of, or any sum toward the expense of said improvement be paid out of the treasury of the municipality, in which case the sum or percentage to be paid shall be stated in said ordinance of intention.' It will be noted that the clause 'from such fund as the council may designate' was omitted from the section as amended. Section 6 of the ordinance of intention provides: 'It is further ordered and declared by said city council of the city of Los Angeles that the sum of $1,500,000.00 be paid toward the expense of said improvement, in section 1 of this ordinance described, out of the treasury of said city.' Under the statute prior to its amendment the name of the fund from which the contribution was to be paid was required to be stated (*O. T. Johnson Corp.* v. *City of Los Angeles, supra*). The undoubted purpose of the amendment was to avoid the requirement that the fund be so designated. When the time comes for the city to order the payment of the contribution it must be assumed that such payment will be made from a fund from which it will be lawful to make the payment. The language of said section 6 is deemed sufficient for the purposes of the ordinance of intention."

▉▉ As an additional reason for rejecting appellant's contention it may well be pointed out that if the city was without authority to appropriate any sum less than the whole cost of the improvement the action of the council in attempting so to do was *ultra vires* and section 5 of the

ordinance of intention void. If void, that particular section of the ordinance would be disregarded—treated as if it were not there—and the remainder of the enactment given full force, since the void portion could be eliminated and still leave a workable and enforceable ordinance (*Mordecai* v. *Board of Supervisors*, 183 Cal. 434 [192 Pac. 40]; *Hunt* v. *Superior Court*, 178 Cal. 470 [173 Pac. 1097]; *Maclay* v. *Love*, 25 Cal. 367 [85 Am. Dec. 133]; *Ex parte Gerino*, 143 Cal. 412 [66 L. R. A. 249, 77 Pac. 166]; *Matter of Bonds San Joaquin Irr. Dist.*, 161 Cal. 345 [119 Pac. 198]). The effect of this would simply be that the whole burden of the cost of the improvement would have to be borne by the assessment district without contribution from the city. So far from being benefited by such a construction of the city's power as appellant contends for, it would operate to increase the amount of the assessment as to his remaining property in the district as well as all other assessments on property therein.

 As to the point that the city charter authorizes the council to appropriate the whole but not a portion of the cost of the improvement it is only necessary to point out that the language of section 37 is permissive, not mandatory, and inasmuch as the appropriation is made before the amount of compensation to be paid the owners of property taken or damaged is ascertained in the trial of the condemnation suit, the total amount of which compensation forms the bulk of the expense of the proceeding, it would be manifestly impossible for the council to determine in advance what would be the entire cost and to appropriate that amount. Furthermore, we find no conflict between the permission thus accorded the council by the charter and the provision of section 2 of the act as amended in 1925 to the effect that the council may order "the whole or any percentage of, or *any sum*" toward the expense of the improvement to be paid out of "the treasury of the municipality," and it is our duty to construe both of these laws, the charter and the statute, in so far as they deal with the same general subject matter, as though they were but one act, each referring to and supplementing the other, harmonizing them so far as possible so as to give force to each without destroying the meaning or intent of the other. (*Spreckels* v. *Graham*, 194 Cal. 516 [228 Pac.

1040]; *Bateman* v. *Colgan,* 111 Cal. 580 [44 Pac. 238]; *Mc-Minn* v. *Bliss,* 31 Cal. 122.) So construing them we are of the opinion that the provisions of the charter permit the city to avail itself of those of section 2 of the statute.

Appellant next urges that the order setting the cause for trial and appointing referees was violative of section 8 of the act (Stats. 1927, p. 1145, sec. 6), which provides that when all defendants have answered or their defaults have been entered a motion may be made, on notice to those who have appeared, to set the case for trial, in that said order was made prior to the filing of several answers and the taking of several defaults against defendants failing to answer. Appellant's own answer was filed more than seven months before the order setting the case was made; the state of the record was as open to him as to the city; he was served with notice of motion to set, and the record herein discloses no objection on his part to the setting of the case. He cannot be heard to raise such an objection for the first time on this appeal (2 Cal. Jur. 234; *Griess* v. *State Investment & Ins. Co.,* 98 Cal. 241 [33 Pac. 195]). Moreover, if error was committed by setting the case for trial before all answers were in and all defaults entered, appellant has failed to show in what manner, if at all, he was injured thereby. Such error, if error there was, was of the most harmless description and well within the purview of section 4½ of article VI of the Constitution.

The next two points raised by appellant may be considered together, as they both rest largely upon the same argument. His contention is that the interlocutory judgment signed by Judge Keetch following the jury trial as to certain parcels of land "does not follow the verdict of the jury" in that it was, as to some of those parcels, based upon stipulations as to value instead of evidence submitted to the jury, and that the findings signed by Judge Shaw following the hearing of the referees' report are open to the same objection. Appellant had no interest in any of the parcels to which these stipulations related, and it is difficult to see in what manner he could possibly be affected, since "the damage to one [defendant in an action in eminent domain] will in no particular depend upon damage to others. Neither party will be interested in any allowance for damages except his own" (*Weiler* v. *Superior Court,* 188 Cal.

729 [207 Pac. 247, 248]). His theory, however, is that his land not taken will be subject to assessment to pay the expense of the improvement, which assessment will be based on compensation awarded without any evidence of value having been submitted to the jury in the one instance and to the court in the other. ■ We see no reason why the parties to an action in eminent domain may not, if they choose, stipulate as to the fact of value as well as to any other fact, just as they may do in any other type of action (23 Cal. Jur. 816). Such stipulations have always been regarded by the courts as establishing the facts stipulated and as taking the place of evidence with regard thereto. (See long list of cases cited in footnotes on page 816, article on ''Stipulations,'' in 23 Cal. Jur.) A situation somewhat analogous to that of which appellant complains arose in the case of *Adamson* v. *County of Los Angeles,* 52 Cal. App. 125 [198 Pac. 52], in that a portion of the compensation awarded the land owner was fixed by stipulation and not by the deliberations of the jury on evidence presented to them. The jury in that case had found that the amount of fencing required to fence the owner's land abutting the roadway condemned. was twenty-nine miles and that the cost thereof was $650 per mile, to which sum the owner was entitled as compensation in addition to the value of the strip of land taken and the severance damages. One of the grounds urged on a motion for new trial was that the jury had erroneously computed the amount of mileage of fencing required. This point the trial court found well taken and that the correct mileage was thirty-one and one half miles, for which the defendant owner should have been awarded further compensation at the same rate per mile. It therefore required the county to consent to this increase of compensation as a condition to a denial of the motion for new trial, whereupon the county counsel, representing the plain- tiff county, filed a stipulation consenting to this increase in the amount of the defendant's compensation over and above the compensation found by the jury. One of the grounds urged by the appellant owner for a reversal was that the lower court had no power to act on this stipulation ''and by so doing to change the amount of compensation fixed by the jury.'' This contention the court held to be without

merit. The same point was urged in *County of Los Angeles* v. *Rindge Co.*, 53 Cal. App. 166 [200 Pac. 27], which case involved the same proceeding as that in the Adamson case, it being urged that the effect of the trial court's ruling on the motion for new trial and its action on the stipulation "was an exercise by the court of the functions of the jury, by reason of which defendants were deprived of the constitutional right of having a vital element of damage determined by the jury." This contention was held untenable. Hearings in the Supreme Court after judgment in this court were denied in both of these cases.

We have carefully examined the other points made by appellant and find them without merit.

The judgment is affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 2, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 30, 1930.

All the Justices present concurred.