[Civ. No. 7216. Second Appellate District, Division Two.—December 5, 1930.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Respondent, v. J. G. OLIVER et al., Defendants; LEONARD J. WOODRUFF, Appellant.

250

J. A. Coleman and Edward Fitzpatrick for Appellant.

Erwin P. Werner, City Attorney, and Arthur Loveland and Arthur W. Nordstrom, Deputies City Attorney, for Respondent.

ARCHBALD, J., *pro tem.*—This is an appeal by Leonard J. Woodruff from an order made by the Honorable Walter S. Gates, Judge of the Superior Court in and for Los Angeles County, giving respondent immediate possession and use of the real property belonging to appellant, described in said order.

Appellant was one of the defendants in an action brought by the City of Los Angeles to condemn for street purposes a portion of a lot belonging to him, as well as property of the other defendants. The defendant Woodruff waived a jury trial and the hearing before referees appointed in said action was held in September, 1927. On April 12, 1928, the referees returned and filed their report, fixing the value of the land to be taken from appellant at $162,496, and his damages at $16,000, or a total damage of $178,496. The damages were fixed as of the date of the issuance of the summons, August 6, 1926. The report came on for hearing before the Honorable Hartley Shaw, a Judge of said Superior Court, on the sixteenth day of July, 1928, on the objections and exceptions filed thereto by the appellant herein, at which hearing witnesses were examined on behalf of both respondent and appellant, and on November 28, 1928, said judge made his findings of fact and conclusions of law, to the effect that the value of the land taken and severance damages were as found by the report of the referees; that the use to which said property sought to be condemned was to be applied was one authorized by law; that the acquisition thereof was necessary to such use and that upon payment of said sum so awarded to the defendant or into court for his benefit, together with costs of suit, the plaintiff should be entitled to a decree condemning such land to the use of the plaintiff and the public for the widening of Cahuenga Boulevard. A judgment based on such findings and conclusions was also signed the same day, to the effect that upon payment to the several defendants or into court

for their benefit severally of the amounts awarded them the land sought to be condemned should be condemned for the use of said city and the public for such purposes, which judgment fixed appellant's costs at $21.50. An appeal was taken from said judgment by the defendant Woodruff, appellant here, which was decided by this court on December 3, 1929 (102 Cal. App. 299 [283 Pac. 298]). It was appellant's contention on such appeal that the 1927 amendment of section 10 of the Street Opening Act of 1903 did not apply to pending actions and that the damages should have been based on the value of the property at the time of trial instead of the date of the issuance of the summons. While that appeal was pending the City of Los Angeles filed an affidavit in said action for an order directing the defendant Woodruff to show cause before said court why an order should not be made giving the city immediate possession of the land of defendant described in said findings and interlocutory judgment, reciting that the amount fixed as compensation, $178,496, was paid into court on August 17, 1929. Defendant Woodruff appeared in opposition thereto and filed a motion to quash said order to show cause and an affidavit by one R. E. Bonsall which stated that he had resided in Hollywood for eight years and that during such time was dealing in real estate specializing in Hollywood Boulevard business property, particularly from Vine Street on the east to La Brea on the west; that appellant's property is on the south side of Hollywood Boulevard one block west of Vine Street; that for eight years he as a realty salesman had made investigation and inquiry as to sales, leases and transactions concerning real property in the vicinity of that of defendants, and that the reasonable market value of defendant's property per front foot was as follows: July 30, 1927, $7,500; September 28, 1927, $7,500; July 16, 1928, $8,000, and August 6, 1928, $6,000. The width of defendant's property so sought to be taken was forty feet. The hearing on said order to show cause was argued before Judge Gates on December 6, 1929, at which time both sides stipulated that the amount of the judgment, together with the costs, had been paid into court by plaintiff for the benefit of the defendant Woodruff, and on January 3, 1930, an order was made by Judge Gates granting immediate

possession and use of the property of the defendant described in the complaint to the City of Los Angeles.

Appellant contends that the lower court erred (1) in overruling appellant's motion to quash said order to show cause and (2) in making the order for immediate use and possession of said land, and in refusing to fix a sum as a fund to pay further damages and costs.

■ (1) Counsel for appellant urge that inasmuch as the affidavit on which the order to show cause was based did not show that the costs of $21.50 had been deposited, the motion to quash should have been granted. The record shows that the costs were deposited before the motion was heard, and consequently there would not seem to be any merit in the contention or any prejudice resulting to defendant.

(2) Appellant under his second contention urges that the order for immediate possession should not have been made (a) because there was no final judgment entered in the case as provided by section 31 of the 1903 Street Opening Act, nor any final order condemning the land at the time the order was made, (b) because at such time full compensation had not been deposited in court for the reason that no interest had been paid on the interlocutory judgment, and (c) because the order did not provide a fund to insure the payment of any further damages and costs that might be awarded.

■ (a) Appellant contends that there should have been a final judgment under section 31 of the Street Opening Act of 1903. Section 12 of such act provides: "Upon the confirmation of the report of the referees, or receipt of the verdict of the jury, or the filing of the findings of the court, the court shall make and enter an interlocutory judgment in accordance with such report, verdict or findings adjudging that upon payment to the respective parties, or into court for their benefit, of the several amounts found due them as compensation, and of the costs allowed to them, the property involved in the action shall be condemned to the use of the plaintiff, and dedicated to the use specified in the complaint." Section 31 provides: " . . . On satisfactory proof being made to the court of payment of the amounts awarded by the interlocutory judgment to the

respective parties entitled thereto, or into court for their benefit, it shall direct the interlocutory judgment to be satisfied, and shall make and enter a final judgment, condemning the lands described in the complaint to the use of the plaintiff for the purposes specified in the complaint."

The provisions of section 12 have been strictly followed in the instant case. An appeal was taken from the interlocutory judgment rendered and the proceedings for the order for possession under section 1254 of the Code of Civil Procedure were taken while such appeal was pending. It is very evident from a reading of section 1254 that the judgment referred to there is the judgment referred to in section 12 of the Street Opening Act awarding damages to the plaintiff, and not the final judgment condemning the land. The language of section 1254 is so clear that it is doubtful if appellant would have made this contention if it were not for certain language appearing in the case of *County of San Mateo* v. *Coburn,* 130 Cal. 631, 637 [63 Pac. 78, 80, 621], where the court says: "A final decree of condemnation can be made only after full compensation has been made to the owner, or ascertained and paid into court for him, and, *as the order for possession pending the appeal must have this final decree for its foundation, it must fall with the reversal of the decree.*" (Italics ours.) In that case the court reversed the judgment entered below condemning the land and used the language quoted. The case is to be distinguished, we believe, in view of the fact that section 1254 of the Code of Civil Procedure as it existed then is not the one in force now, and as a matter of fact the section then in force was afterward held unconstitutional by the Supreme Court. (*Steinhart* v. *Superior Court,* 137 Cal. 575 [92 Am. St. Rep. 183, 59 L. R. A. 404, 70 Pac. 629].) The present section was enacted in 1903, after such decision.

There can be no question but that the interlocutory judgment, so called, is a final judgment. The Supreme Court, in the case of *California Southern R. R. Co.* v. *Southern Pacific R. R. Co.,* 67 Cal. 59, at page 63 [7 Pac. 123, 126], uses the following language to such a judgment: "The judgment based in part on the assessment of damages and adjudicating that the use is public, and the taking necessary,

etc., is the 'final judgment' from which an appeal may be taken.'' In the case of *City of Los Angeles* v. *Pomeroy,* 132 Cal. 340 [64 Pac. 477], which was a motion in the Supreme Court to stay proceedings pending an appeal from a final order of condemnation made by the lower court, the court in speaking of the order said: ''This was a special order made after final judgment,'' citing *California Southern R. R. Co.* v. *Southern Pacific R. R. Co., supra.*

The case of *Heilbron* v. *Superior Court,* 151 Cal. 271 [90 Pac. 706], grew out of a condemnation proceeding in which the plaintiff had judgment for the value of the land and injury resulting to the remaining land. Defendant then gave notice of intention to move for a new trial and at the same time perfected his appeal from the judgment, which appeal was pending when the plaintiff made a motion in the trial court for an order under section 1254 of the Code of Civil Procedure, authorizing it to take immediate possession of the land described in the complaint. When the motion came on for hearing in the court below objection was made that the court had no jurisdiction to entertain the same, which objection was overruled, whereupon application for a writ of prohibition was made to the Supreme Court and decided in the opinion cited. The point raised here was not called to the attention of the court in the Heilbron case. However, the court acted on the application, and in view of that fact, and of the clear reading of section 1254, as well as the further fact that this section was not in force when the facts under the case of *San Mateo* v. *Coburn, supra,* arose, and in view of the decisions of the Supreme Court on the finality of the interlocutory judgment both before and after the Coburn case, it would seem that the statement quoted from the Coburn case is not now the law of this state.

(b) Counsel for appellant urge that interest should have been computed on the award made, citing Act 3757, page 1384, Deering's General Laws of California, which provides that ''the rate of interest . . . on . . . judgments rendered in any court of this state, shall be seven dollars upon the one hundred dollars for one year''. Counsel urge that interest not having been so computed, either from a date commencing thirty days after entry of the interlocutory

judgment or from August 17, 1929, the date when plaintiff had sufficient money on hand to pay the judgment, and such amount not having been deposited, full compensation was not paid into court. Section 1249 of the Code of Civil Procedure provides among other things: "If an order be made letting the plaintiff into possession, as provided in section 1254, the compensation and damages awarded shall draw lawful interest from the date of such order." Such provision, however, is held by the Supreme Court to not apply to section 1254 as it now exists. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 177 Cal. 249 [170 Pac. 426].) The proceedings in this case were brought under the Street Opening Act of 1903, section 31 of which provides that as soon as there is sufficient money in the hands of the city treasurer in the fund devoted to the proposed improvement to pay the amounts awarded defendant by the interlocutory judgment it shall be paid to the parties entitled or into court for their benefit. The appellant concedes that plaintiff did not have such money on hand until August 17, 1929, and the record shows that the award in question here was paid into court that same day. The payment into court of the amount of the interlocutory judgment is equivalent to a tender thereof and stops the running of interest. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co., supra.*)

(c) Must the court in making an order under section 1254 of the Code of Civil Procedure in all cases require the deposit of a sum in addition to the amount of the judgment? The facts involved in the case of *Spring Valley Water Co.* v. *Drinkhouse*, 95 Cal. 220 [30 Pac. 218], arose at the time section 1254 was in all substantial matters the same as now, and the court in discussing it said: "This section is not violative of any provision of the Constitution, but directly in line with that instrument wherein it treats of such matters. Section 14 of article I provides: 'Private property shall not be taken or damaged for public use without just compensation having been first made to or paid into court for the owner.' It would seem that the framers of both the Constitution and the statute had in view the delays incident to condemnation proceedings, and the necessity in many cases of allowing the property to be taken and used for a public use during the progress of

the litigation, provided an adequate fund to fully reimburse the land owner was first paid into court.'' It is interesting to note that section 1254 was amended in 1897 (Stats. 1897, p. 186) to provide for the making of an order for possession ''at any time after the filing of the complaint, and the issuance and service of summons thereon.'' Such provision was held violative of section 14, article I, of the Constitution as it then existed, because it permitted the taking of property without a judicial determination of the amount constituting ''just compensation''. (*Steinhart* v. *Superior Court, supra.*) Section 1254 was thereafter amended (Stats 1903, p. 109) to provide that the property could be taken ''at any time after trial and judgment entered'', so as to meet the requirement of the Constitution, and in 1928 section 14 of article I of the Constitution itself was amended to provide that the state or county, etc., may take ''immediate possession and use of any right of way required for public use . . . upon first commencing eminent domain proceedings . . . and thereupon giving such security in the way of money deposited as the court in which such proceedings are pending may direct''. So it will be seen that now there would be no constitutional objection to a section similar to 1254 of the Code of Civil Procedure as it stood prior to its present form, even though the amount deposited would be *entirely* at the discretion of the court. The industry of counsel has not produced a case passing upon the point appellant urges here, nor has the court found one; but the plain reading of the section shows that the matter of any deposit, in addition to the full amount of the judgment, is in the discretion of the court. After providing for the payment of the amount of the judgment into court the section provides: ''and such further sum as may be required by the court''. Certainly if the legislature had intended to require the judge in every case to order the deposit of an additional sum it would have used language expressing such intent, such, for example, as ''and a further sum in such amount as the court may direct'', leaving the amount only discretionary. But the language used leaves the matter of the payment into court of ''such further sum'' entirely to the court.

In section 1254 we find this language: "In ascertaining the amount to be paid into court the court shall take care that the same be adequate and sufficient." It is plain ·that the legislature in this cautionary advice to the court shows its desire that in so far as is humanly possible, considering the discretion it gave the court in fixing the amount, an amount should be paid sufficient to cover any award that might be made in case the judgment or order is reversed on appeal and a larger sum fixed on the new trial; and it might be argued that inasmuch as the interlocutory judgment is a fixed amount the court could only need such advice in fixing the "further sum" mentioned, implying that in every case such "further sum" would be a part of the amount to be "ascertained" by the judge and "paid into court". We must take notice, however, of the fact that all appeals taken are not by the defendant by reason of inadequacy of the award, but that the plaintiff as well may appeal because of its exorbitance. Again, not every appeal is successful nor does every new trial increase the amount of the former judgment, and the section plainly recognizes this well-known fact by providing that "in all cases where a new trial has been granted upon the application of the defendant, and he has failed upon such trial to obtain greater compensation than was allowed him upon the first trial, the costs of such new trial shall be taxed against him". Such argument does not give effect to what would seem to be the clear language of the section, and the cautionary advice would seem to apply only if in the discretion of the judge such "further sum" is required.

Are we compelled to read the word "may" as "must"? Such a change would not only be doing violence to the section as it seems to read, but to the English language as well; and reading it as "shall" would not, in our opinion, change the discretionary form of the sentence. The legislative intent was, as we have said, to provide, so far as humanly possible, to have deposited a sufficient sum to cover any award that might be made, but that intention is not helped, so far as we can see, by trying to make the section mandatory in the respect claimed by appellant, inasmuch as even then the amount would necessarily be in the discretion of the court, while the clear reading leaves the requiring of the

further amount discretionary, and many cases would clearly not need such further sum to sufficiently secure the payment of the award. If the legislature had desired to remove the chance of failure in the sufficiency of the deposit by reason of the exercise of discretion on the part of the court, it would no doubt have required the deposit of the amount fixed by the defendant in his answer, as the New York code provides (N. Y. Code Civ. Proc., sec. 3380), or in the largest amount testified to by any expert at the time of trial. So long as an appeal is pending the action of the court in satisfying the judgment under section 31 of the Street Opening Act of 1903 is stayed (secs. 946 and 949, Code Civ. Proc.), so there would seem to be no possibility of obtaining the final order of condemnation until the interlocutory judgment becomes final, unless the defendant is consenting thereto either expressly or by necessary implication; and if the award should be increased as a result of the appeal there would be no final judgment condemning the land until deposit or payment of the additional amount, and if such deposit or payment were not made the court having jurisdiction of the subject matter and parties would oust the party seeking to condemn the property and mete out to the owner adequate damages for the temporary use and injury, applying the deposited sum thereto. (*State ex rel. Volunteer Min. Co.* v. *McHatton,* 15 Mont. 159 [38 Pac. 711].) And "as the detriment caused by the permanent taking of this land must certainly be greater than the detriment caused by its temporary use, we have in the award of the jury in the condemnation proceeding a fund of money which, as it is sufficient to pay all loss to the owner by reason of the permanent taking, is certainly sufficient to pay the minor loss caused by the temporary taking". (*Heilbron* v. *Superior Court, supra,* p. 277.)

The fixing of the "further sum" being in the discretion of the court and based upon conflicting evidence, viz., the interlocutory judgment, report of referees, etc., and the affidavit filed by appellant, it will not be disturbed by us. (*Daniels* v. *Church,* 96 Cal. 13 [30 Pac. 798].) It is to be remembered also that at the time the order was made by the lower court the interlocutory judgment had been affirmed

on appeal, and a hearing has since been denied by the Supreme Court, so no abuse of discretion would appear to have been shown even though the case is now pending on appeal before the United States Supreme Court.

There would seem to be no error committed by the court below in denying the motion to quash the order to show cause or in making the order for immediate possession.

Judgment affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 30, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 2, 1931.